UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON, KENTUCKY

UNITED STATES OF AMERICA,    ) Lexington Criminal
                           ) Action No. 13-94
     Plaintiff,          )
                           ) At Lexington, Kentucky
-vs-                     )
                           ) September 15, 2014
ERIK A. HENTZEN,          ) 10:00 a.m.
                           )
     Defendant.          )


TRANSCRIPT OF SENTENCING HEARING PROCEEDINGS
BEFORE THE HONORABLE JOSEPH M. HOOD
UNITED STATES DISTRICT JUDGE


Appearances:

On behalf of Plaintiff:     JASON ALLEN DENNEY, ESQ.
                             Assistant U.S. Attorney
                             260 West Vine Street
                             Suite 300
                             Lexington, Kentucky  40507

On behalf of Defendant:     MICHAEL R. MAZZOLI, ESQ.
                             Cox & Mazzoli PLLC
                             600 West Main Street
                             Suite 300
                             Louisville, Kentucky  40202

Court Reporter:             PEGGY W. WEBER, RPR
                             Official Court Reporter
                             U.S. District Court
                             P.O. Box 362
                             Lexington, Kentucky  40588
                             (859) 421-0814



Proceedings recorded by mechanical stenography,
transcript produced by computer.

1    (Whereupon, the Sentencing Hearing proceedings

2    commenced on Monday, September 15, 2014, at 10:00 a.m.,

3    on the record in open court, as follows.)

4              THE COURT:  Good morning.

5              MR. DENNEY:  Good morning.

6              MR. MAZZOLI:  Good morning, Judge.

7              THE COURT:  Madam Clerk, call the matter on,

8    please.

9              THE CLERK:  Yes, Your Honor.

10             Lexington Criminal Action No. 13-94,

11   United States of America versus Erik A. Hentzen, called

12   for sentencing.

13             THE COURT:  Let the record reflect that

14   United States is present in the courtroom by counsel,

15   that the defendant is present in the courtroom with

16   counsel.

17             You ready to proceed, Mr. Denney?

18             MR. DENNEY:  Yes, Your Honor.

19             THE COURT:  Mr. Mazzoli?

20             MR. MAZZOLI:  Yes, sir.

21             THE COURT:  I've read more about this case

22   through the objections to the presentence report, to the

23   responses to the objections to the presentence report, as

24   well as the response to the objections to the presentence

25   report, and the sentencing memo.

1          In all due candor I see one question, in

2 calculating the guidelines.  And I think the guidelines,

3 to Mr. Hammonds' credit, are pretty well justified by the

4 facts in this case that I've heard.  The only question

5 that I have is the question of the five-level enhancement

6 for distribution.

7          You may talk, Mr. Mazzoli, all you want, but

8 those -- that's the one I am really concerned with.

9          MR. MAZZOLI:  I understand, Your Honor.  And

10 I'm happy to focus just on that one objection.

11          THE COURT:  All right.  And I think it's the

12 one in 2G2.2(b)(3).

13          MR. MAZZOLI:  That is true, Your Honor.

14          THE COURT:  Okay.

15          MR. MAZZOLI:  Could I for the record have one

16 objection on the obstruction of justice enhancement?

17          THE COURT:  All right.  We'll get to that.

18          MR. MAZZOLI:  Okay.

19          THE COURT:  We'll get to that.

20          MR. MAZZOLI:  Thank you, Judge.

21          THE COURT:  Go ahead if you want to talk about

22 that objection.

23          MR. MAZZOLI:  Well, Judge, on the bartering I

24 doubt that I have more to add than what I've said in the

25 sentencing memorandum.  The real key -- the reason that

1  the sentencing guidelines add extra points, so many extra

2  points, for bartering conduct -- it's, actually,

3  Your Honor, you will notice that it's the exact same as

4  distribution for money coming back.

5       THE COURT:  Right.

6       MR. MAZZOLI:  And, in fact, the distribution

7  for money coming back is, I think, graduated for the

8  amount of income the defendant received.  But five points

9  additional is a huge amount -- would require a

10  significant amount of money coming in.

11       The evidence in the case was that Erik had set

12  his software in such a way that basically nobody could

13  access anything but what was in the incoming folders, the

14  so-named incoming folder, and that's something he

15  couldn't change.  While things are downloading using this

16  e-mail software, they're being put --

17       THE COURT:  EMule.

18       MR. MAZZOLI:  EMule, yes, sir.  They are being

19  put by -- by force, in a way, into that incoming folder.

20  And while a file is there, it is accessible by everybody

21  else who has eMule.

22       But Erik would move any completed download just

23  as a regular practice, every night would be sweeping

24  files out of that folder, and he purposefully did not

25  designate any other of his files; pornography, videos of

movies, Beatles music, nothing.  Even though he had vast

amounts of all of that stuff, he didn't designate any of

it for sharing.

And I believe that when the law enforcement

officers came to Erik's house, and they basically

interrupted the machine in the process of downloading,

there were only four pornographic videos there in that

folder, and nothing else anywhere available for sharing.

The -- for there to be bartering, the kind of

idea of actual exchange where a person is offering child

pornography, not Beatles music or other stuff like that,

but actually offering child pornography to someone in

return with an understanding that, I will give it to you

but you have to give it to me, that never happened in

this case, Your Honor.

THE COURT:  Mr. Denney?

MR. DENNEY:  Well, Judge, a couple of

responses.

First, with respect to the thing about the

bartering transaction that the enhancement goes to, first

of all, it's not just child pornography the defendant has

to expect to receive back.  That's not the only thing of

value that the guideline limits itself to.  The

guidelines themselves say thing of value means anything

of valuable consideration.  And we make the point in our

sentencing memorandum and in our response that a thing of value can be just what it means. It can be many different things to many different people.

Here I believe that the defendant -- the evidence at trial showed the defendant received a thing of value by the way he extensively used the program. This defendant maintained a high I.D. rating within eMule. And, in fact, he testified that he understood how the I.D. system worked and that he wanted to maintain a high I.D.

So it's the United States' response and our position that it's that high I.D. value within eMule. That's the thing of value that the defendant expected to receive while he was extensively using the file sharing program. And that applies just with respect to the plus five enhancement.

I think there's a second issue lurking behind that, and that is whether there was quote/unquote distribution going on at all and, of course, there is. And that's because of the way the guidelines define distribution. And they do it very, very broadly. They -- the guidelines define distribution as any act, including possession with intent to distribute, production, transmissions, advertisement, and transportation related to the transfer of material

involving the sexual exploitation of a minor.

I would say that a clear-cut fact here is that this defendant advertising availability of child pornography files, that is how he was caught. The Kentucky Attorney General's office could never have caught this defendant if his computer was not advertising the availability of child pornography files.

I also think that this defendant possessed with the intent to distribute child pornography because I think he's effectively admitted that he did everything he could to slow down the rate at which his computer was sending it out, but still that tells us that he knew his computer was sending it out but at a slow speed.

So if the Court is not convinced with respect to the plus five, the bartering, that the high I.D. as a thing of value, then certainly I think the Court has to apply a plus two for distribution.

THE COURT: Mr. Mazzoli?

MR. MAZZOLI: Yes, sir. On the high I.D. issue, I have spent some time on Wikipedia and also on the eMule software's main website.

A high I.D. does not come from eMule as far as how much I've uploaded or downloaded or anything like that. High I.D. has nothing to do with that.

High I.D. is when -- it's a question of whether

your computer is behind a firewall in your -- for
example, a computer here in this courthouse would be
behind a firewall.

THE COURT: We hope.

MR. MAZZOLI: Yes; yes, sir. And, therefore,
by definition would have a low I.D. no matter who was
trying to use it, no matter what log-in name they use, no
matter how much they might have shared from some other
computer. If they're here and they're behind a firewall,
they're going to get a low I.D.

It's even -- according to Wikipedia, even a
heavy uploader who uses something called MorphXT or
Xtreme is a -- I don't even know what that is,
Your Honor. But even a heavy uploader who uses one of
those and is forced to operate on a low I.D., such as in
a hotel room or at work, will find that he has little
control over his upload priorities. He's going to have a
low I.D. It's forced on him. It has nothing to do with
uploading.

So it could not have been the thing of value
that Erik had in mind. The -- as to advertising the
availability of child pornography files, I believe, and I
could be corrected, but I believe that the testimony and
the facts really is that only those items that Erik had
prohibited everybody else in the world from looking at

his directories, that people could not just look around
in his computer and search for files. He -- basically he
didn't share any files. He didn't allow people to get
any of his files. And so he didn't let them even see
what he had.

The only files that could be gotten off his
machine were the incoming -- in the incoming folder. And
the advertising, such as it is, is done by the network
software to say this stuff is being downloaded to Erik.
I guess whatever is in his incoming folder is seeable,
visible, to other users, but he's not advertising it.
And the most he can do was what he did do, which was to
get it out of that incoming folder on a very regular
daily basis.

THE COURT: I think that there comes a time
when you have to look at what was happening, and I know
that the Kentucky authorities were able to get into,
track Mr. Hentzen, by virtue of that advertisement that
was showing that stuff was coming in on his computer,
albeit, through a server that wasn't his, through a modem
that wasn't his. But they finally tracked it down using
the fact that there were things being advertised, and
that was being shown.

If I go back and look at things that are not
technically in the record as far as the trial -- well, it

1  is in the record to be honest.  I believe there are

2  instances where even Mr. Hentzen said, I like to keep

3  things.  He's a hoarder.  And it's pointed out by one of

4  the psychiatric reports in this case that he's a hoarder.

5  It's his stuff.  It's my stuff.  I don't want anybody

6  else to have my stuff.

7          So I'm not for sure that he -- and he very

8  candidly said, people could get to my stuff, but it would

9  be like trying to feed a starving village with a spoon,

10  with a bowl of soup and a spoon.  It would be very slow

11  and very hard to do, but it could be done.

12          I -- I am more inclined -- well, I am

13  inclined and I so find that in this particular

14  case that the guideline range -- or the guideline for

15  Section 2G2.3(f) -- or, excuse me, (f) is the appropriate

16  one.

17          Now, you wanted to talk about the obstruction

18  of justice enhancement.

19          MR. MAZZOLI:  Yes, Your Honor, and I will make

20  it brief.

21          Of course, Erik maintains that he did tell the

22  truth at trial, and so as a -- as a formal matter we

23  object to any enhancement for perjury.

24          I would --

25          THE COURT:  I'm not for sure he perjured

1  himself.  He just said that he didn't keep stuff.

2          MR. MAZZOLI:  Indeed.

3          THE COURT:  Well --

4          MR. MAZZOLI:  And, Your Honor, you're touching

5  on an important point, which is that the burden is on the

6  government in making the request for a perjury

7  enhancement, to specify the false statement, to show that

8  that particular false statement was material, somehow the

9  jury cared about that particular fact, and that the --

10  Mr. Hentzen made the statement with the intention of

11  telling a falsehood.

12          So we do stand on that requirement as part of

13  our objection.

14          THE COURT:  All right.  Mr. Denney?

15          MR. DENNEY:  Well, Your Honor, we did make that

16  objection because obstruction of justice is clearly

17  warranted in this case.  There were numerous times the

18  defendant committed perjury, and in our objection to the

19  probation officer we cite the specific instances.  Now,

20  it's in the record.  That's record entry 51.  That's the

21  jury trial transcript at page I.D. 579 and again at 613

22  and 614.

23          And if I recall, that is when even under direct

24  exam when Mr. Hentzen was answering Mr. Pence's

25  questions, he completely denied ever knowingly possessing

or viewing or knowingly downloading any child
pornography.  That absolutely cannot be squared with the
jury's finding beyond a reasonable doubt that he did, in
fact, knowingly possess and knowingly received or
downloaded child pornography.

So we would point to those specific statements.

Now, with respect to materiality, certainly the
defendant believes that that was important for the jury
to hear his denial.  It went to the crux of the case, the
entire case was about knowledge.  I think the Court
remembers that from all the trial testimony.

THE COURT:  Mr. Mazzoli?

MR. MAZZOLI:  Nothing further, Your Honor.
Thank you.

THE COURT:  I -- I agree with Mr. Denney in the
specific instances in which you committed perjury in this
matter.  Not perjury, but he misled the juror -- or
attempted to mislead the jury in a matter that was
material.  His statements that he didn't intentionally do
that were belied by the fact that if they look in the
computer, there are particular folders, I think, where
child porn was placed.  And I don't know how you know
which one to place where unless you somehow see it.  And
I don't know how you could not find a -- or see them
if -- without -- or put them in that folder without

1    seeing them.

2            So I think that the obstruction of justice

3    enhancement is warranted.

4            Anything else, Mr. Mazzoli?

5            MR. MAZZOLI:  No, Your Honor.

6            THE COURT:  All right.  Then if we take that,

7    reduce the offense level by three, the difference between

8    the five and the two in the distribution enhancement,

9    that would give us a -- let's just start from the get-go

10   and see how we calculate the range.

11           The presentence report would give a base

12   offense level in this matter of 22.  We combine these two

13   offenses, by the way, because they're -- in the

14   presentence report that's multiple counts adjustment.

15   The base offense level for this offense is a 22.

16           There is a two-level increase because the

17   material involved a pre-pubescent minor or a minor who

18   had not yet obtained the age of 12 years, the offense

19   level is enhanced by two.  I think that is warranted

20   by the -- some of the videos, the portions of some of the

21   videos, that I saw.  And just to make sure I went back

22   and looked at the videos, and there is clearly

23   pre-pubescent minors involved.  There is no sign of any

24   puberty obviously visible.

25           As I said, we reduce the next level to a --

1  from a five to a two.

2          The next question is whether the conduct

3  material portrays sadistic or other masochistic conduct

4  or other depictions of violence.

5          The one video that just absolutely warranted

6  the four-level enhancement was the bondage of a female

7  minor who was crying and screaming while she was being

8  violated.  That is -- warrants the four levels.

9          The offense involved the use of a computer, so

10 the two levels is obviously warranted there.

11         There were 600 or more images.  The offense

12 level is increased by three.

13         So that -- wait a minute, is it five?

14         PROBATION OFFICER:  Yes.

15         THE COURT:  Increased by five levels.

16 According to -- that's a typo, isn't it?

17         PROBATION OFFICER:  Yes.  Sorry about that,

18 Your Honor.

19         THE COURT:  Increased by five levels.  That

20 gives it, when we come to the obstruction, and my finding

21 on that is determined or has already been made.

22         So our total offense level, or adjusted offense

23 level, then would be a 39.

24         There is no criminal history in the matter so

25 we would go from an offense level 39 to a Criminal

History Category I.

The range would be 262 to 327 months.

There is a period of supervised release of five years to life for each of the both -- for both counts.

The fine range would be 25,000 to 250,000.

There is no restitution -- restitution is mandatory, but there is none determined at this time.

And the special assessment will be $100 for each of the two counts.

Would you like to come to the podium with Mr. Hentzen?

MR. MAZZOLI: Yes, Your Honor.

Could I make an argument under 3553?

THE COURT: That's what we're going to do next.

MR. MAZZOLI: I understand. I'm sorry.

THE COURT: That's why you come up here.

MR. MAZZOLI: Very good.

THE COURT: And you will be allowed to make your 3553(a) motion.

MR. MAZZOLI: Yes, sir.

THE COURT: Of course, I say you're allowed, but I have no choice. It's the law.

MR. MAZZOLI: Certainly.

Well, Your Honor, I would make that motion and

point out to the Court that under Section 3553, as you
know and have seen many, many times, the purpose of
sentencing is to pick out a sentence that's sufficient
but not greater than necessary.

In my memorandum I noted that many of the
enhancements that you just read through really apply to
everybody who is convicted of this crime.

THE COURT: Well, not necessarily. Because
there are -- not necessarily. They're not enhancements
for violent -- for masochistic or sadistic.

MR. MAZZOLI: I think, Your Honor, if I may,
and just --

THE COURT: Well -- go ahead. I'm sorry for
interrupting you.

MR. MAZZOLI: Yes. Sadistic, that's -- it
applies to 75 percent or 74.2 percent of cases it occurs
but not everyone obviously.

THE COURT: Yeah.

MR. MAZZOLI: But these additions of points to
Erik are applying more because of the crime of conviction
rather than particular things that he did that makes him
worse than the typical person who has -- has engaged in
this conduct.

By looking at, for example, the factors --
there's not a sentencing guideline's issue, but the

factors that the sentencing commission has said publicly
are probably more reflective of culpability for child
pornography cases. It would be the number and content of
the images, which would weigh very heavily against
Mr. Hentzen.

But the next factor would be was there any
involvement with other offenders? There was none on --
for Mr. Hentzen.

And then finally does he have a history of
engaging in sexually abusive conduct, and he does not.

Looking at those factors he is less culpable
than the typical child pornography offender. And I would
say to the Court that the guidelines figure is more than
necessary and more than what is necessary to be
sufficient. More than 20 years in prison for Erik is too
much, and I would urge the Court to come down as much as
the Court believes is appropriate to make this an offense
that is punished by what's sufficient but not more than
necessary.

THE COURT: All right. Thank you. Mr. Denney?

MR. DENNEY: Well, Your Honor, as we point out
in our response to the sentencing memorandum, questioning
the guidelines in these cases I think has become popular
recently. But I think the -- what's most instructive on
that point is the Sixth Circuit, their most recent

1   responses to those arguments.

2           And I would point the Court particularly to

3   both the United States versus Bistline I, United States

4   versus Bistline II.

5           The Sixth Circuit tells us, we know, we realize

6   the guideline ranges for these offenses are extremely

7   high.  We know that Congress had a hand in inflating

8   them, but that's okay.  And the reason that's okay is

9   because of how serious this offense is.

10          What I have not heard from this defendant is

11  any acceptance of responsibility about how his actions

12  harmed all of the little girls and little boys in the

13  thousands of videos he collected.  No responsibility for

14  that whatsoever.

15          I think the victim impact statements in this

16  case make clear that this defendant's actions, Erik

17  Hentzen's actions, hurt them.

18          All people who collect child pornography are

19  hurting those kids.  Supreme Court recognized the concept

20  30 years ago in the Ferber case.  Even if a child is

21  finally able to get over their original abuse, when the

22  defendants collects their images, images of them at their

23  worst, that continues to cause them pain, much more pain

24  than the original abuse does.  That's why this offense is

25  serious.  That's why Congress and the commission have

made the guideline ranges and the punishments for these
offenses so severe.  There is absolutely nothing about
this defendant, his history and characteristics, or his
conduct that take him out of the heartland of what
Congress and the commission intended to punish severely.
Nothing about this defendant at all.

THE COURT:  Thank you, Mr. Denney.

Anything else --

MR. MAZZOLI:  No, Your Honor.

THE COURT:  -- Mr. Mazzoli?

MR. MAZZOLI:  Thank you.

THE COURT:  Mr. Hentzen?

DEFENDANT HENTZEN:  No, not at this time.

THE COURT:  I took all of this material home
with me over the weekend.  And every time I went through
it, I would say, well, we're going to have to look at the
3553(a) factors.  And about the only factor that I saw
that really went -- really impacted me was the age of
the -- age of the defendant.

That being said, I agree with Mr. Denney that
I have not heard yet from Mr. Hentzen that he's sorry
for what he did, even though it's clear that he was doing
it.

I think though that the mandatory -- the term
of imprisonment -- term of imprisonment for both counts

1   is not more than 20 years.  I think that a sentence the

2   Congress expected some people to get is a sentence of

3   20 years, and the guidelines reflect that it's even --

4   can get more.

5           But I think given the defendant's age, along

6   with some of the other factors in this case, a sentence

7   slight -- below the guideline range but at the statutory

8   maximum would be warranted.

9           It is the judgment of the Court that the

10  defendant, Erik A. Hentzen, be committed to the custody

11  of the Attorney General for a period of 240 months on

12  each of Counts 1 and 2, to be served concurrently, to

13  produce a total term of 240 months.

14          Upon release from imprisonment, the defendant

15  shall be placed on supervised release for a period of

16  five years to life on each of the two counts.

17          I guess that I'm also required to say why.

18  I think it's necessary in this particular case for the

19  reason just pointed out by Mr. Denney, that the

20  defendant has failed to acknowledge that he did

21  anything wrong.

22          The fine range -- the fine will be waived.

23          There is $100 special assessment on each of

24  Counts 1 and 2, for a total amount of $200.

25          While incarcerated, the defendant -- it's

recommended that the defendant participate in the
Bureau of Prisons Residential Sex Offender Treatment
Program.

It is further recommended to the Bureau of
Prisons that the defendant undergo health -- in a
mental health evaluation, and if deemed necessary
participate in a mental health treatment program.  I
think the report from the psychiatrist in this matter
would warrant that.

It is recommended to the Bureau of Prisons that
the defendant participate in educational job skills and
vocational training programs of his choosing.  I think it
was six years in college without a degree seems to me
that there's no focus on getting an education, so he
needs to do that.

While on supervised release, the defendant
shall not commit another federal, state, or local crime,
shall comply with the standard conditions that have been
adopted by this Court, and shall comply with the
following additional conditions.

The defendant shall not possess a firearm,
destructive device, ammunition, or dangerous weapon.

The defendant shall submit to one drug test
within 15 days of release of imprisonment and at least
two periodic drug tests thereafter.

1          In addition, the defendant shall comply with
2  the following special conditions.

3          The defendant shall attend and successfully
4  complete any mental health diagnosis -- diagnostic
5  evaluations and treatment or counseling service as
6  directed by the probation officer.

7          The defendant shall pay for the cost of
8  treatment services to the extent he is able as determined
9  by the probation officer.

10          The defendant shall participate in a program
11  for treatment of mental health/evaluation, sexual
12  disorders, shall undergo a sex offender risk assessment,
13  psycho-sexual evaluation and/or other evaluations as
14  needed.

15          Shall be subject to periodic polygraph
16  examinations and/or computer voice stress analysis
17  testing at the direction and discretion of the probation
18  officer.

19          And shall follow the rules and regulations of a
20  sex offender treatment program as implemented by the
21  probation office.

22          The defendant's residence and employment shall
23  be pre-approved by the probation officer and in
24  compliance with local law.

25          The defendant shall not frequent, volunteer,

work at places where children under the age of 18
congregate.  For example, playgrounds, parks,
day care centers, public swimming pools, youth centers,
video arcade facilities, unless approved by the
probation officer, and shall have no contact with the
victims.

The defendant shall not associate or have
verbal, written, telephonic, or electronic communication
with any person under the age of 18 without permission of
the probation officer.  This provision does not encompass
persons under the age of 18, such as ticket vendors,
cashiers, waiters, et cetera, that the defendant must
deal in order to obtain ordinary and usual commercial
services.

The defendant shall not possess, listen,
view -- listen to or go to locations where any form of
pornography, sexually-stimulated performances, or
sexually-oriented material, items, or services are
available.

The defendant shall not possess a device
capable of creating pictures or video without the
approval of the probation officer.

The defendant shall not rent or use a post
office box, storage or facility, without the approval of
a probation officer.

1          The defendant shall register as a sex offender

2   as prescribed by state law.

3          The defendant shall not possess or use a

4   computer or any device with access to any online commuter

5   service at any location, including places of employment,

6   without the prior written approval of the probation

7   officer.  This includes any Internet service provider,

8   bulletin board system, or any public or private network

9   or e-mail system.

10          The defendant shall commit to the probation

11  office conducting unannounced examinations of his

12  computer systems and internal/external storage devices,

13  which may include retrieval and copying of all memory

14  from hardware/software and/or removal of such systems for

15  the purpose of conducting a more thorough inspection, and

16  will consent to having installed on his computers a --

17  any hardware/software to monitor his computer use, and

18  preventer access to any particular materials, and to

19  consent to periodic inspections of any such installed

20  hardware/software to ensure that it's functioning

21  properly.

22          The defendant shall provide to the U.S.

23  Probation Office accurate information about his entire

24  computer system, hardware/software, and internal/external

25  storage devices, all passwords used by him, and will

abide by the rules of the computer restriction and
monitoring program.

The defendant shall submit his person,
residence, office, vehicle, or property under control to
a search conducted by the probation office at a
reasonable time and in a reasonable manner based upon
reasonable suspicion of contraband or evidence of a
violation of a condition of release.

Failure to submit to a search may be grounds
for revocation of supervision.

The defendant shall inform any other residence
that the premises may be subjected -- subject to searches
pursuant to this condition.

The defendant shall provide the probation
officer with access to any requested financial
information.  This special condition for financial
disclosure is recommended as a means to allow the
probation office to monitor purchases of electronic or
peripheral devices, such as any Internet service, either
subscribed to or accessed by the defendant.

For example, amount paid for Internet devices
exceeds the amount approved by the probation office, the
defendant has purchased more electronic devices than he
possesses -- he claims to possess.

The defendant's financial situation does not

1  warrant a fine in this case so I waive the fine.

2           He is, of course, to pay the special assessment

3  of $200.

4           Any questions or objections to that sentence on

5  behalf of the United States, Mr. Denney?

6           MR. DENNEY:  Your Honor, perhaps there's a

7  question.  Perhaps I misheard.  What was the Court's

8  order with respect to the length of the supervised

9  release?

10           THE COURT:  Life.

11           MR. DENNEY:  Okay.  Thank you, Your Honor.

12           THE COURT:  And the reason why he has not -- I

13  thought I specified that.  Because he has yet to accept

14  responsibility for, which gives me concern that he is

15  more than -- would likely re -- more than likely recur in

16  this conduct.

17           MR. DENNEY:  Yes, Your Honor.

18           THE COURT:  Any objections or questions,

19  Mr. Mazzoli?

20           MR. MAZZOLI:  No, other than to reassert our

21  objections just as a formal matter, but no.

22           THE COURT:  Sure.  And I have ruled on them,

23  and I think all, with the exception of the two, the two

24  level for obstruction and the two level for distribution,

25  I think we've ruled on those.

1           MR. MAZZOLI:  Yes.

2           THE COURT:  The rest of them the government is

3  completely right, and the probation officer is completely

4  right.

5           Any questions or objections regarding that

6  sentence, Mr. Hentzen?

7           DEFENDANT HENTZEN:  Not at this time.

8           THE COURT:  Well, if you're going to make them,

9  you better do them now.

10           DEFENDANT HENTZEN:  I can't.  Sorry.

11           THE COURT:  Okay.  Well, I mean, this is the

12  time that you have to make them.  I guess your attorney

13  has made them, but don't complain about me not giving you

14  the chance.

15           You have -- I recommend that he serve his

16  sentence at the Federal Correctional Institution in

17  Butner, North Carolina, which is the institution, I

18  believe, closest to here that has the necessary treatment

19  programs that I believe the defendant needs.

20           The defendant has the right to appeal his

21  sentence, as well as his conviction, to the United States

22  Court of Appeals for the Sixth Circuit, which on proper

23  appeal will make a determination as to whether the

24  defendant -- whether I committed an error of law during

25  the trial or in sentencing.

1              If the defendant wishes to take an appeal, he

2   must file the notice of appeal within 14 days of the date

3   of the written judgment in his case.

4              If he wishes to take an appeal but cannot

5   afford the cost of an appeal or the services of an

6   attorney on appeal, counsel will be appointed to

7   represent him, and he will be allowed to appeal

8   in forma pauperis.

9              You understand those rights, Mr. Hentzen?

10             DEFENDANT HENTZEN:  Yes.

11             THE COURT:  Have him sign the acknowledgment,

12  please.

13      (Whereupon, the defendant, Erik A. Hentzen, signed

14  the form.)

15      (Whereupon, an off-the-record discussion was had

16  with the Court and probation officer.)

17             THE COURT:  The items mentioned in the

18  forfeiture provision of the indictment are forfeited

19  hereby to the United States.

20             Anything else, Mr. Denney?

21             MR. DENNEY:  No, Your Honor.  Thank you.

22             THE COURT:  Mr. Mazzoli?

23             MR. MAZZOLI:  No, Your Honor.  Thank you.

24             THE COURT:  Okay.  Court will be in recess

25  until 1 o'clock I think it is, isn't it?

1          THE CLERK:  1:30.

2          THE COURT:  1:30.

3     (Whereupon, the Sentencing Hearing proceedings

4  concluded at 10:40 a.m.)

5                C E R T I F I C A T E

6     I, Peggy W. Weber, certify that the foregoing is a

7  correct transcript from the record of proceedings in the

8  above-entitled matter.

9

10
   September 23, 2014_____          s/Peggy W. Weber_____
11     DATE                           PEGGY W. WEBER, RPR

12

13

14

15

16

17

18

19

20

21

22

23

24

25