UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:13-CR-94-JMH
CIVIL ACTION NO. 5:17-CV-90-JMH

UNITED STATES OF AMERICA,                                      PLAINTIFF,

V.                          **MAGISTRATE JUDGE'S REPORT
                            AND RECOMMENDATION**

ERIK A. HENTZEN,                                               DEFENDANT.

## INTRODUCTION

Erik A. Hentzen, hereinafter "Defendant," a federal prisoner currently incarcerated at the Federal Correctional Complex in Butner, North Carolina, is presently before this Court upon his Motion to Vacate, Set Aside, or Correct Sentence, hereinafter "Motion to Vacate," pursuant to 28 U.S.C. § 2255; Defendant's Motion to Vacate includes a request for an evidentiary hearing pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings. [R. 68]. Defendant's Motion to Vacate was followed by Defendant's First Motion for Discovery, hereinafter "Discovery Motion," pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings. [R. 85]. All of these matters are now ripe for decision, following the submission of the United States' Response to Defendant's Motion to Vacate, [R.84]; the United States' Response to Defendant's Discovery Motion, [R. 87]; and Defendant's Replies to both Responses, [R. 86] and [R. 89]. These matters were transferred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) by order of the Hon. Robert E. Wier. [R. 91]. For the reasons set forth below, it is recommended that Defendant's Motion to Vacate, including his request for an evidentiary hearing, [R. 68], and Defendant's Discovery Motion, [R. 85], be denied, and that this action be dismissed with prejudice and stricken from the docket.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

On June, 18, 2017, Defendant was convicted for the knowing receipt and possession of thousands of files containing child pornography under 18 U.S.C. § 2252(a)(2) and 18 U.S.C. § 2252(a)(4)(B). [R. 39]. Following his conviction, on September 16, 2014, Defendant was sentenced to a total of 240 months of imprisonment, followed by a lifetime of supervised release. [R. 56]. Defendant was further recommended for a mental health evaluation and necessary treatment, participation in vocational training programs, and participation in the Residential Sex Offender Treatment Program. [*Id.*]. Two days later, on September 18, 2014, Defendant filed his Notice of Appeal to the Sixth Circuit. [R. 57]. Then, on August 17, 2015, Defendant's claims on appeal were rejected. The Sixth Circuit held that the evidence admitted at trial was sufficient to sustain the jury's verdict as to Defendant, any errors on the admission of certain evidence were harmless, and Defendant's sentence was substantively reasonable. *United States v. Hentzen*, 638 F. App'x 427 (6th Cir. 2015). Despite his failure at the Sixth Circuit, however, Defendant filed a Petition for a writ of certiorari with the Supreme Court on January 12, 2016. [R. 66]. Again, this time on February 29, 2016, Defendant failed: the Supreme Court denied his Petition. [R. 67].

A full year later, on February 28, 2017, Defendant filed this Motion to Vacate, [R. 68], which he supports on three general grounds; each of which is further supported by a catalogue of allegations, affidavits, and attachments.[1] First, that counsel[2] for Defendant was ineffective at trial for failing to adequately investigate the evidence against Defendant and for failing to adequately prepare for confrontation of the witnesses against Defendant. [*Id.* at 14]. Second, that Defendant's counsel was ineffective with regard to the sentencing process, particularly because Defendant's

---

[1] The series of documents filed by Defendant for purposes of his Motion to Vacate *alone* exceed 440 pages.

[2] Defendant had numerous attorneys at various stages of this litigation. [R. 68 at 11]. For the sake of simplicity, the names of these attorneys are omitted, and attorneys for Defendant are collectively referred to as "counsel," except where a specific differentiation between individual attorneys is necessary.

"trial counsel failed to appear" and thus incorrectly advised Defendant with regard to his allocution. [*Id.* at 38–39]. And, finally, that Defendant's counsel was ineffective on appeal for failing to adequately challenge factual misstatements and litigate further objections to Defendant's sentence. [*Id.* at 41]. As to his Motion to Vacate as a whole, Defendant claims his allegedly ineffective assistance of counsel was not raised on direct appeal because "a defendant normally should raise IAC claims, as Mr. Hentzen has done, in a post-conviction proceeding under 28 U.S.C. § 2255." [*Id.* at 44 (citing *United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998))].

On May 15, 2017, the United States filed a Response in Opposition to Defendant's Motion to Vacate, disputing all three grounds Defendant cites in his own favor. [R. 84]. Specifically, the United States alleges Defendant's trial counsel was not ineffective for failing to adequately investigate the evidence against Defendant because counsel obtained access to relevant evidence, even where possession was barred; developed the opinions of experts with regard to the evidence against Defendant; and reasonably advised Defendant to enter stipulations with the United States. [*Id.* at 4–7]. Further, the United States argues counsel for Defendant was adequately prepared for the confrontation of witnesses and trial, supporting that position with the record. [*Id.* at 7–9 (citing [R. 68 at 32–37; R. 50 at 103–19, 253–65])]. Although Defendant alleges his retained trial counsel was ineffective for failing to appear at his sentencing hearing, the United States refutes his argument. "The record reflects that [Defendant's] sentencing hearing commenced on September 14, 2015, at 10:00 a.m., and that his attorney was present."[3] [R. 84 at 9 (citing [R. 60 at 2; R. 54 (noting the presence of Defendant's retained counsel)])]. The United States, too, notes it was Defendant himself who decided not to comment at his sentencing hearing, even if upon his

---

[3] While one member of Defendant's retained trial counsel, Steve Pence, did not appear, Pence's co-counsel, Michael R. Mazzoli, did so appear. [R. 68-2 at 38; *see also* R. 60; R. 54]. Mazzoli had been responsible for drafting and submitting Defendant's Sentencing Memorandum on September 5, 2017, [R. 52 at 17], ten days prior to Defendant's Sentencing on September 15, 2017, [R. 54; R. 60].

3

counsel's advice, [*Id.* at 9 (citing [R. 68 at 38])]; and, in any event, there is no evidence of prejudice resulting from Defendant's lack of allocution. [*Id.* (citing [R. 68 at 38])]. As to Defendant's appellate counsel, the United States notes "appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." [*Id.* at 10–12 (quoting *Greer v. Mitchell*, 264 F.3d 663, 677 (6th Cir. 2001))].

Defendant's Reply to the United States' Response, hereinafter "Reply," was submitted to this Court on June 14, 2017. In his Reply, Defendant argues the United States' Response "consists largely of strawpersons (sic) and unsupported, generic, umbrella assertions, and conspicuously fails to challenge the central allegations of [Defendant's Motion to Vacate]." [R. 86 at 1]. Defendant argues that his counsel withheld evidence from him that could have been exculpatory had it been properly provided to him, [*Id.* at 2–4]; that Defendant's counsel may have committed an ethical violation in seeking to "coerce" Defendant into agreeing to certain factual stipulations, [*Id.* at 5–6]; and that "no competent member of the criminal-defense bar could have envisioned a path to victory flowing from [the] cross-examination and defensive proof" initiated and introduced by Defendant's counsel, [*Id.* at 6–8]. Otherwise, Defendant's Reply is largely duplicative of his Memorandum in Support of his Motion to Vacate. [*Compare* R. 68-15, *with* R. 86].

Following the United States' Response to Defendant's Motion to Vacate, on June 3, 2017, Defendant submitted what he characterizes as his "First" Discovery Motion. [R. 85]. Defendant's Discovery Motion is opposed by the United States, which submitted a Response to Defendant's Discovery Motion on June 17, 2017. [R. 87]. On July 3, 2017, Defendant submitted his Reply to the United States' Response, which largely consists of criticism of the United States' method of advocacy. [R. 89]. In addition, however, Defendant argues additional discovery would enable him to analyze evidence insufficiently analyzed by his original trial counsel, perhaps gaining him

traction for his Motion to Vacate. The United States counters that additional discovery would be meaningless. "[Defendant's] motion has not set out any specific facts that point to the conclusion that with more evidence he would be entitled to relief." [R. 87 at 1].

Because this Court recommends denial of Defendant's Motion to Vacate, Defendant's Discovery Motion is rendered moot. The factual and procedural background of Defendant's Discovery Motion need not be further addressed.

## ANALYSIS OF INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Defendant brings his Motion to Vacate under 28 U.S.C. § 2255. Section 2255(a) provides that a prisoner in custody under a sentence of a United States Court may petition that court to amend his or her sentence upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, that the court imposing the sentence lacked jurisdiction to do so, that the sentence is excessive, or that the sentence is otherwise subject to collateral attack. Such a defendant must sustain any allegation by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence."); *see also Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). If alleging a constitutional error, such a defendant must show the error "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Alternately, if alleging a non-constitutional error, such a defendant must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

Ineffective assistance of counsel is a constitutional ground on which a sentence may be challenged under Section 2255. *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). In evaluating such a challenge, the Sixth Circuit applies the two-prong test established in *Strickland*. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005); *see also Strickland*, 466 U.S. at 687. Under *Strickland*, a defendant first must show his or her counsel was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, a defendant must show the deficient performance actually prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id. Both* elements must be shown. Thus, not only must the attorney's performance have been deficient, but that specific deficiency must also have been the antecedent without which the Defendant's sentence would not have been imposed. *Id.*

It is true that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. Nonetheless, an attorney representing a criminal defendant does have some specific, articulable duties. All attorneys owe their clients a duty of loyalty; a duty to avoid conflicts; a duty to advocate, inform, and consult; and counsel has a duty "to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.* In evaluating an attorney's duties to his or her client and the sufficiency of an attorney's performance of them, however, courts must be highly deferential. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.*; *see also Engle v. Isaac*, 456 U.S. 107, 133–34 (1982); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2009). Indeed, there is a *presumption* of

adequate representation. "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quotation and citation omitted).

## Ground One

Defendant alleges his counsel was ineffective on three primary grounds. First, for failing "to properly investigate and sufficiently comprehend the Government's digital computer forensics evidence to permit the defense to subject the prosecution's case to meaningful adversarial testing." [R. 68 at 14]. Specifically for this first primary ground, Defendant cites four "subgrounds." These proceed as follows: that Defendant's counsel improperly withheld evidence; inadequately advised Defendant with regard to his evidentiary stipulations; failed to properly prepare for the cross-examination of the United States' witnesses; and failed to properly prepare Defendant and an expert witness for trial. [R. 68 at 14–15]. For to the first of these subgrounds, Defendant specifically points to his counsel's receipt of the "Kentucky Attorney General's Cyber Crimes Branch's forensics report *and its supporting documentation* from both the state-court prosecutors and the United States." [R. 86 at 3]. Defendant alleges that, had his counsel provided him with these documents, he could have used the data this report contained to his benefit at trial. [*Id.* at 4].

Defendant has attached the first two pages of the Kentucky Attorney General's Cyber Crimes Branch Forensics Report, hereinafter "Forensics Report," to his Reply to the United States' Response. [R. 86-3]. Defendant claims the Forensics Report "was generated during the investigation and produced through discovery, thereby squandering [Defendant's] ability to use his extensive knowledge of computers to identify weaknesses and errors in the investigators' assumptions" based on the data contained within the Forensics Report. [R. 68 at 14]. Defendant claims he made numerous requests of specific information contained in the Forensics Report,

although he "did not receive from Mr. Pence any of the information [requested]." [R. 68-2 at 20 ¶ 38]. Defendant swears in his affidavit that, following his trial and unsuccessful appeal, "nearly all of the data that yielded exculpatory information that I repeatedly and perpetually requested" was found on a disk within his trial counsel's possession. [*Id.* at 20–21 ¶ 39]. This, however, is impossible. As noted by the United States, "the forensic discovery in child pornography cases contains the child pornography, which is contraband. The standard practice in this District is to give the defendant's expert and counsel access to, but not possession of, the forensic evidence." [R. 84 at 6]. Perhaps this is why, as also sworn to by Defendant himself, Defendant was denied "this documentation throughout the direct-appeal process" and was informed "that the information was not in the case file." [R. 68-2 at 19 ¶ 39].

Defendant misrepresents the nature of the Forensics Report. [R. 86 at 3]. Defendant claims the Forensics Report contains exculpatory evidence for Defendant that, if made available to him, could have been used by Defendant to produce the graphs and other documents he has attached as exhibits at the end of his Motion to Vacate. [*See, e.g.*, R. 68-8]. But much of this evidence—or its equivalent—*was* considered by the jury as substantive evidence in Defendant's case. *See United States v. Hentzen*, 638 F. App'x 427 (6th Cir. 2015). As such, this argument is disingenuous. Even presuming, however, that Defendant's counsel wrongly withheld this information from Defendant, there could be found no evidence of prejudice. Indeed, *if* counsel for Defendant withheld the Forensics Report, it was presumptively due to some trial strategy. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). For example, the documents Defendant specifically attaches to his Motion to Vacate as "exculpatory" contain evidence a juror might read as damning for Defendant, which trial counsel might have sought to exclude. Such evidence includes, but is not limited to:

> As noted in Defendant's Affidavit, [R. 68-2 at 44 ¶ 96], the seventh attachment to
> Defendant's Motion to Vacate, labeled "Appendix A3 -- Search Terms Sorted By

8

Date & Time," [R. 68-7], contains Defendant's individualized search terms. These search terms include:

➢ "anal," [R. 68-7 at 1 ¶3];
➢ "babyj," [*Id.* at 2 ¶ 6];
➢ "babyshivid," [*Id.* ¶ 7];
➢ "candydoll," [*Id.* at 5 ¶15];
➢ "candygirl," [*Id.* ¶ 16];
➢ "childlover," [*Id.* at 6 ¶ 18];
➢ "childfugga," [*Id.* ¶ 19];
➢ "cry," [*Id.* ¶ 20];
➢ "ddoggprn," [*Id.* at 7 ¶ 23];
➢ "kidcam," [*Id.* at 9 ¶ 41];
➢ "lolifuck," [*Id.* at 12 ¶ 53];
➢ "pedoland," [*Id.* at 16 ¶ 72; and
➢ "rape," [*Id.* at 20 ¶ 80].

This Court is confounded as to the exculpatory nature of these search terms.

Of note here is also the following: this a Section 2255 action, not a direct appeal of the judgment in this case. Defendant appears to be attempting to litigate the weight of the evidence against him through his Motion to Vacate. But this is an improper forum for that question,[4] and— in any event—the issue has been rendered moot. The Sixth Circuit has already ruled that the evidence against Defendant was sufficient for a jury to find him guilty, and the Supreme Court denied Defendant's petition for a writ of certiorari. *Hentzen*, 638 F. App'x 427; [R. 67]. And even

---

[4] The following is noted numerous times throughout Defendant's Motion to Vacate:

> As a general rule, "a defendant may not raise ineffective assistance of counsel [IAC] claims for the first time on direct appeal[.]" *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012). Instead, a defendant normally should raise IAC claims, as Mr. Hentzen has done, in a post-conviction proceeding under 28 U.S.C. § 2255, in which the parties can develop an adequate and appropriate record for the evaluation of those claims. *See United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998).

[R. 68 at 36]. This Court recognizes Defendant's rights. But this Court is also suspicious, given the unique facts of this case, and the dates hereinafter provided. It is true that Defendant was within his statute of limitations on this matter. But only because 2016 was a leap year, and—even then—Defendant was within hours of the limit. 28 U.S.C.A. § 2255(f)(1); [R. 67 (denying Defendant's petition for certiorari on February 29, 2016)]; *accord* [R. 68 (noting that Defendant's Motion to Vacate was filed on February 28, 2017)]. As ineffective assistance of counsel claims are commonly used as the "backdoor" to an appeal, this Court is leery of specter of abuse. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011).

if this were the proper forum to litigate the weight of the evidence against Defendant, the evidence and conclusions he presents through his affidavits and exhibits is largely redundant.[5] As such, there is ample reason to question whether the evidence Defendant presents through his Motion to Vacate would have ever been admissible. *See, e.g.*, Fed. R. Evid. 403 (relevant evidence may be excluded where there is a substantial risk of "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Even if it were admissible, however, Defendant himself acknowledges the lack of weight his personal testimony might hold. [R. 86 at 10 (noting the jury would give less credence to Defendant's own testimony when compared with other witnesses)]. Under the totality of the circumstances, even assuming Defendant's counsel improperly withheld evidence, it cannot be said Defendant was prejudiced by the result.

Defendant further alleges his counsel inadequately advised him with regard to his evidentiary stipulations. [R. 68 at 14]. These stipulations included "that child pornography files had been found on [Defendant's] computer and that they had been transported in interstate commerce over the internet." *Hentzen*, 638 F. App'x at 429. The goal and effect of the stipulations was to restrict the trial to the relatively simple question of whether Defendant "knew that the files were child pornography when he downloaded and possessed them." *Id.* These stipulations are consistent with the evidence Defendant had at his disposal for his defense, as there was never a

---

[5] The Sixth Circuit notes Defendant presented at trial evidence and arguments largely duplicative of what he seeks to claim his counsel intentionally concealed here. Namely,

> Hentzen argues that the evidence is insufficient because he presented an alternative explanation for the circumstantial evidence: that in downloading massive amounts of data, he had assembled search terms carelessly; had opened files without looking at them for the sole purpose of weeding out corrupted files; and, although he sought adult pornography, he had no idea that the files on his computer also included child pornography. Hentzen's explanations were consistent with the circumstantial evidence; thus, a rational jury could have believed him and decided to acquit. But this jury did not.

United States v. Hentzen, 638 F. App'x 427, 432 (6th Cir. 2015); *see also* [R. 68 at 14; R. 68-2].

10

genuine question as to whether Defendant possessed child pornography. *See, e.g.*, *id.* at 432. Defendant claims, however, that his counsel provided him faulty advice "by inaccurately characterizing [the stipulations] as a quid pro quo for a continuance the Government sought and stating that the stipulation would prevent the government from introducing [Defendant's] child-pornography images and videos at trial." [R. 68 at 14].

While the stipulations did not prevent the admission of some of Defendant's child pornography from being admitted into evidence,[6] the stipulations may have limited the quantity of such videos permitted. As noted by the United States, the stipulations entered into by Defendant fit into his defensive strategy of pleading ignorance as to the possession of the child pornography by circumventing "the lengthy introduction of [Defendant's] computer and the images found thereon, thereby limiting the jury's exposure to those images." [R. 84 at 6]. In such circumstances, Defendant cannot overcome the presumption that "the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

Defendant's next contention is that his trial counsel failed to properly prepare for the cross-examination of the United States' witnesses. [R. 68 at 14]. Defendant alleges his trial counsel prevented him from "reviewing the primary digital-computer-forensics materials produced during the investigation;" "not consulting with a competent expert;" and "neither reviewing the Government's investigators' prior sworn testimony regarding this investigation nor impeaching their trial testimony with significant inconsistencies between their trial testimony and their prior accounts." [R. 68 at 14]. First, although Defendant alleges he was unable to review the primary

---

[6] As noted by the Sixth Circuit, numerous, deeply disturbing exhibits were presented at trial. These included "nine child pornography videos, portions of which were played for the jury, as well as the catalogue. The examples included recordings of adult men sexually abusing young girls—in one video, an infant. Another video depicted a girl forced to engage in sexual activity with an animal." *Hentzen*, 638 F. App'x at 429.

11

"digital-computer-forensics materials" in preparing for his defense—presumably referencing the Forensics Report—this Court has already determined this allegation is of no consequence. It is not clear that *any* evidence contained within the Forensics Report is exculpatory; it is doubtful that the Forensics Report was intentionally withheld; even if the Forensics Report were withheld, it is not clear that this was not for strategic purposes; and, even if the Forensics Report had been made available to Defendant, it is not clear the evidence would have been admissible.

Defendant's allegation that his trial counsel was inadequate for failing to consult a credible expert witness also lacks merit. Defendant acknowledges that his trial counsel worked extensively with one expert witness, Mr. Ingram, "in anticipation of trial." [R. 68-2 at 24 ¶ 50]. "As part of that process, Mr. Ingram inspected the imaged copy of the media seized by the government at the Kentucky Attorney General's offices." [*Id.*]. Defendant's trial counsel, however, did not only consult Mr. Ingram. As acknowledged by Defendant, his trial counsel also sought the aid of another expert witness, "Emmanuel ("Manny") Kressel, recommended by Brian Ingram, to testify to an ancillary matter." [*Id.* at 25 ¶ 53]. Although Defendant does allege Mr. Ingram—based on his own, independent analysis of the evidence against Defendant—may have developed a personal suspicion of Defendant's guilt, [R. 68 at 32 ¶ 49], Defendant fails to show precisely how Defendant's review of the evidence against him "would have differed from Mr. Ingram's analysis, or, for that matter, changed the outcome of his trial." [R. 84 at 6]. Indeed, Defendant fails to allege any notable basis for the alleged inadequacy of Mr. Ingram's qualifications other than his age and religious beliefs. [R. 68 at 32 ¶ 46].[7]

---

[7] Defendant's primary complaints against Mr. Ingram boil down to his frustration that Mr. Ingram's curriculum vitae contained information that "dated back more than a decade," and that Mr. Ingram adhered to a "conspicuous, even evangelical" faith. [R. 68 at 32 ¶ 46].

Defendant's contention that his trial counsel did not review "the Government's investigators' prior sworn testimony regarding this investigation" and did not impeach "their trial testimony with significant inconsistencies between their trial testimony and their prior accounts" is also devoid of merit. [R. 68 at 14]. First, Defendant's trial counsel did achieve a number of concessions from the United States' witnesses, including that "many" of the videos found on Defendant's computers, though pornographic, did not contain child pornography. [R. 50 at 105 ¶ 3–4]. Further, that many of the videos were downloaded while Defendant slept. [*Id.* at ¶ 5–20]. Second, Defendant's trial counsel did impeach the United States' witnesses when it was relevant to do so, including on the point of videos being downloaded during Defendant's sleep. When the witness for the United States countered his pre-trial testimony and denied that videos were downloaded during Defendant's sleep, the witness' credibility was impeached by prior inconsistent statement. [*Id.*]; *see also* Fed. R. Evid. 613.

The United States, however, also notes many other concessions Defendant's trial counsel was able to make for Defendant, including the following:

> That knowing what keywords to use to find child pornography often required some education on the subject; that searching for a keyword may produce unintended results; that [Defendant] may have downloaded several files simultaneously; that no items in the apartment other than electronic devices contained child pornographic images . . . that another investigator could not tell whether [Defendant] had named the files found on his computer . . . that he found no evidence that [Defendant] ordered, sold, or bought any of these images or videos; that he found no evidence that [Defendant] visited a child pornography chatroom; and that he found a large number of adult pornography on the devices.

[R. 84 at 7–8 (citing R. 50 at 103–19, 253–65)]. Defendant's statements are *directly* contrary to the record. [*See id.*]. Aside from his own vacant, contrary accusations, Defendant has failed to produce evidence of his ineffective assistance of counsel at his trial. And, even if Defendant had so produced, there is no evidence in the record to support the conclusion that prejudice resulted.

13

## Ground Two

Defendant's second primary complaint is that his counsel was ineffective with regard to the sentencing process, particularly because Defendant's "trial counsel failed to appear" and thus incorrectly advised Defendant with regard to his allocution. [R. 68 at 38–39; *see also* R. 68-2 at 39–40 ¶ 82–87]. Here again, Defendant's claims are duplicitous. Defendant was represented by his retained trial counsel at his sentencing hearing, by the same attorney who had drafted Defendant's Presentencing Memorandum, which totaled fifty-three (53) pages, including attachments. [R. 68-2 at 39 ¶ 82; R. 52; R. 54]. Defendant's counsel was present for the entire hearing, providing Defendant with careful advice and representation. This is reflected in the Transcript of the Sentencing Proceedings, which records twenty-nine (29) pages of legal advocacy. [R. 60]. The *only* evidence this Court can find that might support some claim of ineffective assistance is that recorded in Defendant's own Affidavit in support of his Motion to Vacate. [R. 68-2 at 39–40 ¶ 82–87]. This evidence, however, is not credible.

Defendant's sentence, though significantly less than what was provided for through the Sentencing Guidelines, was enhanced on charges of perjury.[8] [R. 60 at 12–13 ([This Court] "[T]he obstruction of justice enhancement is warranted.")]. The United States, at the Sentencing Hearing, noted the "numerous" occasions on which Defendant perjured himself. [*See, e.g.*, R. 60 at 11–12 ([The United States] "[E]ven under direct exam when [Defendant] was answering Mr. Pence's questions, he completely denied ever knowingly possessing or viewing or knowingly downloading any child pornography. That absolutely cannot be squared with the jury's finding beyond a reasonable doubt that he did.")]. Now, three years later, Defendant notes in his Affidavit specific, other instances where he claims to or admits to having perjured himself. [*See, e.g.*, R. 68-2 at 12–

---

[8] Notably, though allegedly "ineffective," Defendant's counsel objected to this enhancement. [R. 54 at 10–13].

13 ¶ 20 ("I only mention others' access to keep the factual record accurate and because of [my] false factual stipulation to the contrary."); *id.* at 28 ¶ 59 ("Even though I knew the stipulations contained false statements, I signed it."); *id.* at 38–39 ¶ 81 ("I denied any history of substance abuse despite the fact of my dependence on prescription drugs and heavy use of alcohol.")].

Defendant's primary allegations in support of his contention that he had ineffective assistance at his sentencing hearing are that he expected Mr. Pence, rather than Mr. Mazzoli, to appear at his sentencing hearing, but that it was in fact Mr. Mazzoli who appeared; that Defendant adopted his counsel's optimistic views of the potential for an adverse sentence, and thus refrained from preparing an allocution statement;[9] and that Defendant was informed by his counsel that his Sentencing Hearing was at 1:00 p.m. on September 15, 2014, rather than 10:00 a.m. on the same day, when it actually occurred. [R. 68-2 at 38–41]. This Court, recognizing the potentially dubious nature of the accusations contained in Defendant's affidavit, suspects Defendant may be doing his best to invent a scenario of ineffective assistance. But, even assuming the statements made in Defendant's Affidavit are true, such evidence of relatively minor miscommunications are insufficient alone to support a finding of ineffective assistance. For "[t]he question, of course, is not whether counsel was topnotch, but whether he or she functioned at the level required by the Sixth Amendment." *Greer v. Mitchell*, 264 F.3d 663, 673 (6th Cir. 2001).

### Ground Three

Defendant's final contention is that his appellate counsel was ineffective for failing to adequately challenge "factual misstatements in the Government's response brief that incorrectly characterized the digital-computer-forensics testimony at trial" and litigate objections to

---

[9] Defendant in fact did receive a lenient sentence. His two terms of 240 months of imprisonment are served concurrently, not consecutively. [R. 56]. The United States had recommended a sentence of 262 to 327 months. [R. 53 at 4].

Defendant's sentence enhancement on the basis of perjury. [*Id.* at 41]. Before proceeding to the merits of Defendant's arguments on these issues, however, this Court finds it pertinent to mention two procedural matters applicable here. First, as is demonstrated above and below this paragraph, much of Defendant's Motion to Vacate could be characterized as nothing more than an attempt to re-litigate arguments that failed on appeal. This is an improper forum for the litigation of those concerns, which were rendered moot by the Sixth Circuit and Supreme Court. *United States v. Hentzen*, 638 F. App'x 427 (6th Cir. 2015); [R. 67]. Second, as noted previously, the purpose of an action under 28 U.S.C. § 2255 is to attack a criminal defendant's sentence as flawed and unwarranted in some respect. *Id.* Where such a flaw exists, a criminal defendant may be eligible for a lighter sentence, or, in extreme cases, a new trial. *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). But such an action is not without limits. For example, where an action under 28 U.S.C. § 2255 is based on ineffective assistance of counsel, a finding of ineffective assistance of counsel alone will not necessarily result in a judgement to vacate a criminal defendant's sentence. Even in the presence of ineffective assistance, there must be some resulting prejudice—injury—inflicted upon the criminal defendant. *Strickland v. Washington*, 466 U.S. 668 (1984); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). Where no such prejudice exists, a sentence will stand.

Defendant begins his allegations against his appellate counsel with a discussion of his Sentencing Hearing. Defendant notes that his sentencing guideline range was increased by two levels—to 262–327 months—under U.S.S.G. § 3C1.1 for obstruction of justice, or, perjury. "Without the two-level increase for obstruction of justice," Defendant's offense level "would have been 37 and the applicable Guideline Range given his [c]riminal [h]istory (I), would have been 210-262 months." [R. 68 at 41 ¶ 6]. Defendant acknowledges, however, that his sentence was

within the lesser range of 210–262 months, as Defendant's ultimate sentence was for 240 months. [R. 68 at 41–42 ¶ 7; R. 56]. Nonetheless, Defendant argues that, had he received effective assistance of counsel at sentencing, "a reasonable likelihood exists that the sentencing judge would have made a reciprocal and proportionate departure and would have sentenced [Defendant] to a term of imprisonment less than 240 months." [*Id.*]. Had his appellate counsel raised the issue on appeal, Defendant alleges, the Sixth Circuit *may* have reversed his sentence, finding insufficient the basis of this Court's determination that the obstruction of justice enhancement was warranted. [*Id.* at 42 ¶ 12 (citing *United States v. Warner*, 646 F. App'x 478 (6th Cir. 2016))].

Defendant cites the Sixth Circuit's discussion of his own sentence, as well as *United States v. Warner*, 646 F. App'x 478 (6th Cir. 2016), as support for his contentions. As noted by Defendant, [R. 68 at 42 ¶ 9], his appellate counsel did in fact raise a number of issues with regard to Defendant's sentence on appeal. Despite all of those points, none of which warrant discussion here, the Sixth Circuit found Defendant's "below-guidelines sentence" substantively reasonable. *United States v. Hentzen*, 638 F. App'x 427, 436–37 (6th Cir. 2015). This was found to be the case because sentences are substantively unreasonable only where "the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor," and such circumstances do not exist in Defendant's case. *Id.* at 437 (quoting *United States v. Lumbard*, 706 F.3d 716, 727 (6th Cir.2013)). In fact, Defendant's sentence imposed by this Court was given significant deference: "[a] sentence that falls within a properly calculated guideline range is afforded a rebuttable presumption of reasonableness." *Id.* (quoting *United States v. Evers*, 669 F.3d 645, 661 (6th Cir.2012)). The presumption in this case, however, was especially strong, because "[i]t is even more difficult to demonstrate that a below-guidelines

sentence [such as Defendant's] is unreasonably long." *Id.* (quoting *United States v. Curry*, 536 F.3d 571, 573–74 (6th Cir.2008)).

Defendant finds notable a single footnote in the Sixth Circuit's decision. *Id.* at 430 n. 1. In that footnote, the Sixth Circuit *sua sponte* remarked on the fact that Defendant's appellate counsel chose not to raise the obstruction of justice sentence enhancement on appeal, though counsel had objected when the sentence was imposed. *Id.* This footnote, however, is not evidence that appellate counsel's decision not to raise the sentence enhancement on appeal was the antecedent without which Defendant's sentence would have failed. In fact, the Sixth Circuit took no position on the matter: "[W]e do not determine whether the court's findings were adequate to merit the enhancement." *Id.* Defendant finds similarly miniscule support for his argument in *United States v. Warner*, 646 F. App'x 478 (6th Cir. 2016). *Warner* vacated a criminal defendant's sentence for failure to properly explain the application of an obstruction of justice sentencing enhancement under U.S.S.G. § 3C1.1, which resulted in a sentence of eighty-seven (87) months in prison within the guideline range of 87–108 months. Brief for Defendant-Apellant, *United States v. Warner*, 646 F. App'x 478 (6th Cir. 2016) (No. 14-4067), 2015 WL 7292518 at 7*. In other words, the sentencing enhancement erroneously applied in that case produced the guideline range within which that defendant's sentence fell.

Here, the application of the obstruction of justice sentencing enhancement under U.S.S.G. § 3C1.1 raised Defendant's guideline range to 262–327 months. [R. 60 at 14–15]. But Defendant was sentenced to only 240 months. [*Id.* at 20]. This sentence falls within the lesser guideline range of 210-262 months, which is precisely the range that would have applied *without* the obstruction of justice enhancement. [*See generally id.* (discussing various sentencing ranges); R. 68 at 41 ¶ 6]. Ironically, this is also precisely the range Defendant argues should have been applied in his case.

18

"Without the two-level increase for obstruction of justice under U.S.S.G. § 3C1.1, Mr. Hentzen's Offense Level would have been 37 and the applicable Guideline Range given his Criminal History (I), would have been 210-262 months." [R. 68 at 41 ¶ 6]. Thus, although the obstruction of justice enhancement was applied; the sentence imposed was without the resulting guideline range, but within the guideline range that would have been applied *without* the enhancement. As the sum of Defendant's argument is that his sentence should have fallen within the lower guideline range in which his sentence actually fell, *Watson* has no application. The point is moot. As such, appellate counsel cannot be faulted for deciding not to appeal the matter. Indeed, "winnowing out weaker arguments" and focusing exclusively on those more likely to prevail is the hallmark of effective advocacy, not its antithesis. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2009) (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983))).

Just as appellate counsel's decision not raise the obstruction of justice enhancement on appeal cannot be faulted, so can this Court not fault appellate counsel's evidentiary arguments. Defendant cites a number of apparent clerical errors in the brief appellate counsel filed on his behalf. [*See, e.g.*, R. 68 at 42–43 ¶ ("including the substitution of 'uploading' for 'downloading'")]; Brief for Defendant-Appellant, *United States v. Hentzen*, 638 F. App'x 427 (6th Cir. 2015) (No. 14-6153), 2014 WL 6608528. Defendant also claims he was denied an opportunity to carefully review the brief before it was submitted, and that its contents were therefore compromised. [*Id.*]. There is not, however, significant evidence that the brief submitted by appellate counsel was insufficient or compromised. The brief contained twenty-eight (28) cases and nine (9) statutory and regulatory guidelines; a detailed analysis of the evidence presented at trial favorable to Defendant; an explanation as to why the evidence presented at trial disfavorable to Defendant was insufficient; and careful analyses of both procedural and substantive issues raised

on appeal. Brief for Defendant-Appellant, *United States v. Hentzen*, 638 F. App'x 427 (6th Cir. 2015). The document itself reveals no evidence tending to show the ineffective assistance of counsel; nor is ineffective advocacy reflected in the decision of the Sixth Circuit. *See generally Hentzen*, 638 F. App'x 427 (reflecting the numerous, detailed arguments raised by appellate counsel on appeal).

Here, it cannot be said that Defendant's appellate counsel was ineffective for challenging the sufficiency of the evidence against the Defendant *merely* because said challenge failed. [R. 68 at 43 ¶ 15]. Indeed, because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668,689 (1984). "[T]hat is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). As Defendant alleges no act of misconduct substantiated by the record other than the failure of the appeal, his claim of ineffective assistance of counsel must fail.

## ANALYSIS OF DISCOVERY MOTION

Having recommended Defendant's Motion to Vacate, [R. 68], be found to lack merit, this Court need not reach the question of whether Defendant's Discovery Motion, [R. 85], should or should not be granted. It necessarily follows that, because Defendant's Motion to Vacate should be denied, discovery should not be had. Defendant's Discovery Motion has been rendered moot.

## CONCLUSION

Defendant has failed to state grounds to support his Motion to Vacate. *Haines v. Kerner*, 404 U.S. 519 (1972); *see also Strickland v. Washington*, 466 U.S. 668 (1984). Accordingly,

because Defendant cannot meet the requirements necessary to bring a motion to vacate under 28 U.S.C. § 2255, the undersigned recommends that Defendant's Motion to Vacate, [R. 68], be denied; that Defendant's Discovery Motion, [R. 85], also be denied; and that this action be dismissed with prejudice and stricken from the docket.

Particularized objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service of the same or further appeal is waived. 18 U.S.C. § 636(b)(1); *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). Generalized objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed September 19, 2017.

Signed By:

Edward B. Atkins    *EBA*

United States Magistrate Judge