UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
|     *Plaintiff/Respondent* | ) | |
| | ) | |
| v. | ) | 5:13-CR-94-JMH-HAI |
| | ) | |
| ERIK A. HENTZEN | ) | |
| | ) | **ORDER** |
|     *Defendant/Movant* | ) | |

\* \* \*

This matter is before the Court upon the Report and Recommendation ("Report") of United States Magistrate Judge Hanly A. Ingram [DE 148], wherein he recommends that Defendant Erik A. Hentzen's Motion to Vacate his conviction under 28 U.S.C. § 2255 [DE 68] be denied. Following Judge Ingram's Report, Hentzen filed objections. [DE 149]. For the reasons set forth herein, Defendant's Objections [DE 149] are overruled and the Report [DE 148] is adopted.

**LEGAL STANDARD**

In the absence of an objection to a magistrate judge's report, the district court is not required to review under any standard. *Thomas v. Arn*, 474 U.S. 140, 152 (1985). In contrast, when a specific objection to the Report has been made, the reviewing court is required to review de novo those objected to portions. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Following a de novo review, the district court must "accept, reject, or modify the

recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3). Accordingly, the Court will review de novo the portions of Judge Ingram's Report to which Hentzen objects.

A prisoner may seek habeas relief under § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C.S. § 2255(a). When the § 2255 motion alleges constitutional error, to succeed a federal prisoner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999)(citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). The Supreme Court has recognized that there is a constitutional right to not just counsel, but "effective assistance of counsel," which a defendant can be deprived of by counsel failing to render "adequate legal assistance." U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984)(citation omitted). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

For Ineffective Assistance of Counsel (IAC) claims, the defendant must demonstrate that counsel's performance was deficient and that the counsel's deficient performance resulted in

2

prejudice to the defendant. *Strickland*, 466 U.S. at 687. Regarding the first prong, the court must consider all the circumstances and ask whether "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The Supreme Court is clear that "[j]udicial scrutiny of counsel's performance must be highly deferential" because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. Thus, in an effort to eliminate the "distorting effects of hindsight," the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Even if the court finds counsel's performance to be deficient, the movant must still demonstrate prejudice to succeed on an IAC claim under § 2255. In proving prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 695. The Supreme Court notes that counsel's inadequate performance has different impacts depending on the specific case, the totality of evidence, and the adequacy of the record. "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Id.* at 695-96.

3

**DISCUSSION**

## OBJECTION NO. 1

Hentzen argues that the Report erred in its interpretation of the scope of the remand. While the Report holds that only three issues were remanded, Hentzen asserts that all six issues were remanded.

### a. BACKGROUND

Hentzen filed his § 2255 motion in February of 2017. [DE 68]. The Court adopted the magistrate judge's report [DE 94] denying Hentzen's motion in October of 2018. [DE 97]. When Hentzen appealed the denial of his § 2255 motion, the Sixth Circuit granted in part his application for a Certificate of Appealability ("COA"). *Hentzen v. United States* ("*Hentzen* I"), No. 18-6168, DE 8-2 (March 7, 2019). Specifically, a COA was granted for three issues and denied for three issues. Following the issuance of the COA, the government filed a motion to reverse "and remand the case to the district court for further proceedings consistent with the Court's order." *Hentzen* I, No. 18-6168, DE 11 (March 12, 2019). The Sixth Circuit granted the government's motion to remand. *Hentzen* I, No. 18-6168, DE 15 (May 17, 2019).

The remand order explains that the Sixth Circuit granted Hentzen a COA with respect to three claims, but "denied Hentzen a COA with respect to his remaining claims." *Hentzen* I, No. 18-6168, DE 15-2 at 2 (May 17, 2019). The Sixth Circuit then describes the

4

government's motion for remand: "the government acknowledges that the district court should further consider each of Hentzen's surviving claims in light of this court's order granting Hentzen's COA application in part." *Hentzen* I, No. 18-6168, DE 15-2 at 3 (May 17, 2019). The Sixth Circuit goes on to order: "We VACATE the district court's judgment, GRANT the government's motion to remand, and REMAND this case to the district court for further proceedings consistent with this order." *Id.* Following the remand, the case was referred to the magistrate judge for an evidentiary hearing.

One preliminary issue was the scope of the hearing. Hentzen argued that all six issues raised in his § 2255 motion required review because the Sixth Circuit's May 17 order vacated the district court's judgment in its entirety. [DE 111 at 1]. After reviewing the language of the Sixth Circuit's May 17 order as well as this Court's referral order [DE 104], Judge Ingram held that the scope of the hearing should be limited to the three issues that garnered a COA. [DE 116 at 2-5]. Hentzen filed a Motion to Reconsider [DE 118], but this Court denied the Motion and affirmed Judge Ingram's determination that the remand was limited to the three issues. [DE 121].

In the Report, Judge Ingram again addresses the scope of the issues to be considered. The Report states the history of the matter before upholding the previous decision about the scope,

5

that only the three issues that were granted a COA are to be considered in the Court's analysis of the remanded § 2255 motion.

**b. LEGAL STANDARDS**

First, regarding the COA, upon concluding that a § 2255 motion must be denied, the court may issue a COA "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This occurs when the defendant makes "a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)(citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). A COA may also be granted when defendant shows "that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Brown v. United States*, No. 21-2647, 2022 U.S. App. LEXIS 1594, at *5 (6th Cir. Jan. 19, 2022)(citing *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

When the district court denies a § 2255 motion and declines to issue a COA, the circuit court lacks jurisdiction to rule on the merits. *Miller-El*, 537 U.S. at 336. However, circuit courts have the ability to grant a COA and may issue such certificates limited to specific issues. *See Peterson v. Douma*, 751 F.3d 524, 528-530 (7th Cir. 2014)(confirming that only one issue was certified for

appeal and thus addressable by the court even though the petitioner read the certificate to encompass all four issues raised).

Second, regarding the remand, the district court is limited by the parameters set forth by the Sixth Circuit in its mandate. The law of the case doctrine and the mandate rule require the district court to only reconsider issues that the superior court has not decided, whether the superior court's decision was express or implied. *Sunshine Heifers, LLC v. Citizens First Bank (In re Purdy),* 870 F.3d 436, 443 (6th Cir. 2017). In determining the scope of issues following a mandate, "an appellate court's disposition of an appeal must be read against the backdrop of prior proceedings in the case." *U.S. v. Mendez*, 498 F.3d 423, 426 (6th Cir. 2007). "The trial court must 'implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" *Moore v. WesBanco Bank, Inc.*, 612 F. App'x 816, 820 (6th Cir. 2015)(citing *United States v.* Moored, 38 F.3d 1419, 1421 (6th Cir. 1994)).

### c. ANALYSIS

Taking into account "the letter and the spirit of the mandate" and "the appellate court's opinion and the circumstances it embraces," the Sixth Circuit only remanded the three issues that were granted a COA. First, the limited nature of the remand is clear by looking to the literal language utilized by the Sixth Circuit in the mandate. The Sixth Circuit summarizes the

7

government's motion to remand saying that "the district court should further consider each of Hentzen's surviving claims in light of this court's order granting Hentzen's application in part" before the Sixth Circuit goes on to grant the government's motion. The Sixth Circuit is granting the limited remand, applying only to the "surviving claims" as defined by the COA.

Second, logic requires this Court to interpret the remand as limited to the three issues granted a COA. It is important to interpret the mandate in conjunction with the COA as district courts are required to read the mandate "against the backdrop of prior proceedings in the case" to determine its scope. A COA is only granted when reasonable minds could differ regarding the outcome or when the arguments merit further consideration. The Sixth Circuit has already determined that reasonable minds could *not* have come to a different conclusion regarding the outcome for the three non-surviving issues. Why then would the Sixth Circuit order the district court to reevaluate an issue that they have already determined is undebatable?

In its order partially granting the COA, the Sixth Circuit cites *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) and explains that a COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." [DE 8-2]. Finding that no "substantial showing" had been made, the Court denied the COA for the non-surviving three issues. It is beyond this Court's

8

authority to readdress issues that the Sixth Circuit has not vacated nor remanded. Therefore, Hentzen's first objection is overruled. The Court's analysis is limited to the three surviving issues that were granted a COA.

**OBJECTION NO. 2**

Hentzen argues that the Report erred by declining to grant a COA regarding the scope of the Sixth Circuit's remand. Because a reasonable jurist could not dispute the literal language of the Sixth Circuit's remand, no COA can be granted for this issue.

Additionally, the logic that the Sixth Circuit would not remand issues where it already found that the applicant did not make a substantial showing of the denial of a constitutional right similarly prevents a COA from being granted. The Sixth Circuit already found that for the three non-surviving issues reasonable minds could not differ and that the arguments did not merit further consideration. It would make no sense then for this Court to now say that reasonable minds could differ about whether or not the Sixth Circuit directed this Court to reconsider those claims for which it already determined that reasonable minds could *not* differ. Therefore, Hentzen's second objection is overruled.

**OBJECTION NO. 3**

Hentzen's final objection finds issue with the Report's holding that Hentzen is not entitled to relief under § 2255 for Ground One. Ground One argues that trial counsel, Steven Pence, was

ineffective for failing to adequately investigate and understand the government's digital-computer-forensic evidence, depriving Hentzen of the ability "to mount a meaningful challenge" to the government's computer evidence. [DE 68-15 at 20]. Hentzen breaks down his third objection into five subparts.

## OBJECTION 3A

Hentzen argues that because the Report erred in concluding that the remand was limited, that the Report's finding that § 2255 relief is foreclosed by the law is also erroneous.

### a. BACKGROUND

In Hentzen's application for a COA, he breaks Ground One into numerous subclaims. *Hentzen* I, No. 18-6168, DE 4 at 14-16 (November 7, 2018). In the Sixth Circuit's order granting a partial COA, the appellate court addressed five subclaims related to Ground One's IAC claim, subclaims 1(a) through 1(e). *Hentzen* I, No. 18-6168, DE 8-2 at 3 (March 7, 2019). However, the Sixth Circuit only granted a COA with respect to subclaim 1(d).

The Sixth Circuit breaks subclaim 1(d) into two arguments. First, the COA phrases argument 1 of subclaim 1(d) as Hentzen arguing that "trial counsel was ineffective for failing to obtain and prepare qualified expert testimony to expose inaccuracies in, and otherwise contest, the government's digital-computer-forensics evidence." *Hentzen* I, No. 18-6168, DE 8-2 at 5 (March 7, 2019). Second, the Sixth Circuit defines argument 2 of subclaim 1(d) as

10

counsel failing "to obtain a more reliable, competent, and persuasive digital-computer-forensics expert" because the retained forensic expert, Brian Ingram, was inadequate resulting in the defense being unable to properly formulate trial strategy. *Hentzen I*, No. 18-6168, DE 8-2 at 6 (March 7, 2019). For argument 1, the Sixth Circuit granted a COA. However, for argument 2, there was no explicit grant of a COA.

In the COA order, when argument 2 of subclaim 1(d) was addressed, the Sixth Circuit began by stating the law, "[t]he selection of an expert is a paradigmatic example of the type of strategic choice that, when made after thorough investigation of the law and facts, is virtually unchallengeable." *Hentzen* I, No. 18-6168, DE 8-2 at 6 (March 7, 2019). The Sixth Circuit goes on to apply the law to the facts and conclude that "reasonable jurists would not debate the district court's resolution of this claim." *Id*. The Sixth Circuit emphasized that Hentzen "failed to show that counsel's investigation was not thorough" as Hentzen admitted counsel contacted several potential experts and counsel eventually retained another expert when Ingram proved insufficient. *Id.*

The Report argues that the COA's rejection of argument 2 of subclaim 1(d) "logically preclude a finding of either deficient performance or prejudice on Ground One" because "the Sixth Circuit's finding of reasonable performance in hiring Ingram and Kressel appears to logically exclude a finding of deficient

performance in failing to hire Cobb or a Cobb-analogue" and the "court is not at liberty to revisit these findings, which the appellate court characterized as undebatable." [DE 148 at 41-42].

In response, Hentzen reasserts his previous argument that the Sixth Circuit issued a total remand, which would deflate the Report's argument. Second, Hentzen objects to the Report's reasoning, stating that the "law-of-the-case conclusion would interrupt the Sixth Circuit's May 17, 2019 *Order* as entirely illogical." [DE 149 at 4].

**b. ANALYSIS**

It is clear from the language in the COA order that argument 2 of subclaim 1(d) is not up for reconsideration. The COA order uses terminology like "reasonable jurists would not debate" and Hentzen "failed to show" to express the finality of the issue. Especially when contrasted to the Sixth Circuit's language regarding argument 1 of subclaim 1(d), it is apparent that the COA was only granted for argument 1. The Sixth Circuit explains all of argument 1 of subclaim 1(d), then concludes "Accordingly, Hentzen's COA application is granted with respect to *this* argument." *Hentzen* I, No. 18-6168, DE 8-2 at 5 (March 7, 2019)(emphasis added). Then the Sixth Circuit goes into explaining argument 2 of subclaim 1(d), "Hentzen *also* argues that. . . " concluding that "reasonable jurists would not debate the district court's resolution of this claim." *Id*. (emphasis added). As determined previously in this

12

Order, only those issues which were granted a COA were ultimately remanded to this Court.  Because the Sixth Circuit explicitly refused to grant a COA for the argument that counsel failed to obtain a more reliable expert, this Court is deprived of the ability to consider the sub-issue on remand.

Even if the Sixth Circuit had granted a COA for argument 2 of subclaim 1(d), this Court now finds that Hentzen has not proven IAC on the matter. As the Sixth Circuit points out "[t]he selection of an expert witness is a paradigmatic example of the type of strategic choice that, when made after thorough investigation of the law and facts, is virtually unchallengeable." *Hinton v. Alabama*, 571 U.S. 263, 274-75 (2014)(holding that the judgment must be vacated because trial counsel's performance was deficient for not attempting to understand the state resources available to obtain an expert and the prior courts had not properly conducted a prejudice-prong analysis).

Unlike the attorney in *Hinton* who admitted to using an inadequate expert witness at trial because the attorney did not perform basic research regarding public funds available to his client, trial counsel here diligently searched for a proper expert, retained an expert, realized an alternative expert was needed, searched for a different expert, and retained a new expert. Pence's actions are indicative of a thorough investigation, making the

selection of Ingram as an expert a strategic choice which this court will not challenge further.

Next, Hentzen's objection that the Report's reasoning equates to the Sixth Circuit's Order being illogical is not fruitful. Specifically, Hentzen finds issue with the Report's reasoning that the rejection of argument 2 of ground 1(d) now logically precludes the Court from granting § 2255 relief based on argument 1 of ground 1(d). In addressing and rejecting argument 1 of subclaim 1(d), Judge Ingram noted the paradoxical relationship between the two arguments of ground 1(d). The Report explains how the Sixth Circuit's opinion rejecting argument 2 of subclaim 1(d) forecloses the lower court's authority to revisit the findings of argument 1 of subclaim 1(d): "How can this Court find that Pence was ineffective in failing to hire another expert (Cobb or a Cobb analogue) when the Sixth Circuit has already determined Pence was not ineffective in failing to hire another expert-and that no reasonable jurist could hold otherwise?" [DE 148 at 42]. Hentzen argues that Judge Ingram's rationale implies that the Sixth Circuit opinion is irrational and that there must be some viability to the claim for the Sixth Circuit to have granted a COA.

The Sixth Circuit's opinion is not contradictory, nor does Judge Ingram suggest that it is. First, in granting the COA for argument 1 of subclaim 1(d), the Sixth Circuit says that "the magistrate judge, and the district court by extension, failed to address this

14

precise argument." *Hentzen* I, No. 18-6168, DE 8-2 at 5 (March 7, 2019). The Sixth Circuit's COA issuance did not hold that the original order was wrong, only that the issue was overlooked. Second, it follows logic that if reasonable jurists would not debate that Pence was not ineffective for hiring Ingram as a digital-computer-forensic expert, that would mean that reasonable jurist would also not debate that Pence was not ineffective for failing to hire an expert like Cobb. Therefore, Objection No. 3A, is overruled.

## OBJECTION 3B

Objection No. 3B states that Judge Ingram erred in holding that Hentzen was not prejudiced by the lack of qualified expert testimony attacking the digital-computer-forensic evidence because the government's keyword evidence was the driving force in leading the jury to find Hentzen guilty.

### a. BACKGROUND

Hentzen's main gripe is that the "keyword" proof was not the powerful linchpin evidence Judge Ingram made it out to be because Hentzen has repeatedly pointed to flaws in the keyword evidence, which Hentzen claims that Judge Ingram refused to consider. Judge Ingram's report places significant emphasis on the keyword evidence:

> The overarching question of how severely Dr. Cobb's testimony could have undermined the government's credibility must take into

15

account that the most powerful—and most
emphasized—evidence at trial concerned the
child-porn keywords found on Hentzen's
computer. The government emphasized the
keywords in opening statements and closing
arguments. Both Bell and Baker testified about
them at length. A key piece of evidence was
the file of Hentzen's last-thirty eMule
searches. Of those thirty searches, eleven
were child pornography keywords. Whether he
typed or copy-pasted them, Hentzen entered
those terms into eMule's search bar. Hentzen
testified he did not know those terms were
child-porn-related, but the jury apparently
was not buying it. Further, Hentzen's computer
system contained many images and videos with
multiple child-pornography keywords in their
names (along with system files linked to these
images and videos). Hentzen testified he
understood that terms like "11yo" in file
names were a red flag of child pornography.
D.E. 51 at 17-18, 78-79. And he acknowledged
that multiple child-porn keywords, including
terms like "pedo," "10yo," "12yo," and "14yo"
were visible on his computer screen as active
downloads when agents arrived. *Id*. at 79-80.
Given all this, the jury quite understandably
disbelieved his purported ignorance of the
child pornography on his devices. Even
accumulated with the other purported errors
flagged by Dr. Cobb, this evidence was
unlikely to tip the scales. To find prejudice,
"[t]he likelihood of a different result must
be substantial, not just conceivable."
*Harrington v. Richter*, 562 U.S. 86, 112
(2011). Here, the likelihood is conceivable,
but far from substantial. . . While the issues
raised by Dr. Cobb might nip at the toes of
the government's case, they fail to strike at
its heart. Given the overall strength of the
evidence against him (which was also noted by
the Court of Appeals), Hentzen does not meet
his burden of proving prejudice on Ground
One."

[DE 148 at 53]. Hentzen's objection focuses on the Report ignoring

Hentzen's protests to the keyword evidence, saying that the blind

16

acceptance of the evidence "without even acknowledging Mr. Hentzen's contrary arguments is a monumental mistake that calls into question the entirety of its prejudice analysis." [DE 149 at 8].

**b. ANALYSIS**

While the Report says that "Hentzen does not challenge the keyword evidence adduced at trial," Hentzen assures the Court that he "has consistently and repeatedly challenged the keywords," and he points to three incidents where he criticized the keyword evidence – on cross examination, his affidavit, and in his § 2255 motion. The Court does not deny Hentzen's disapproval of the keyword evidence but supports Judge Ingram's findings that expert testimony akin to Cobb's would not have overshadowed the strength of the keyword evidence.

First, keyword evidence is not up for this Court to reconsider on remand. As stated *ad nauseam*, this Court is only at liberty to address those issues for which the Sixth Circuit remanded. The Court will not now reevaluate the strength of evidence which the Sixth Circuit has chosen not to overturn. Hentzen's repeated attempts to finagle the narrative by re-discussing issues that have already been definitively decided find no merit in this Court.

Second, assuming arguendo that the Court reviewed the supposed flaws in the keyword evidence, this Court still finds that due to the overall strength of keyword evidence, Defendant is unable to

17

show there is a reasonable probability that the trial outcome would have been different. The Court addresses each criticism Defendant espouses to show why the prejudice prong cannot be met.

Defendant fist argues that the keywords have "crossover application" meaning that the keywords the government focused on at trial do not *just* apply to illicit material and that Hentzen's use of the keywords was only for the non-illicit purposes. That Hentzen was just using the term's innocent application is a difficult strategy to successfully employ when some of the keywords the government emphasized included "kidcam", "10yo", "11yo", 12yo, "14yo", and "pedo." At trial, Hentzen even testified that he understood "11yo" was a red flag for child pornography. [DE 51 at 17-18, 78-79]. While Hentzen made the argument at trial that he was unaware certain terms were associated with child pornography, the jury still found Hentzen to have possessed the requisite knowledge for conviction.

Defendant's second argument focuses on trial counsel's failure to point out the flaws in the government's keyword evidence that could have been used to bolster his lack-of-knowledge defense. Specifically, Hentzen asserts that keywords were not in the titles of *some* files, but instead existed in the file's metadata and that *some* of the files the keywords were associated with did not contain imagery or videos. However, Hentzen does not refute that there actually were files associated with the keywords that *did* contain

18

the illicit imagery nor does he dispute that there were files that did contain keywords in the title, opposed to just in the metadata. Assuming trial counsel had raised these objections at trial, the government would still be able to point to contraband images and videos on Hentzen's computer that have keywords in the file's name. Therefore, even if the Court were to take into account Hentzen's criticisms of the keyword evidence, this Court agrees with Judge Ingram that the prejudice prong cannot be met because given the overall strength of the keyword evidence, there is no *substantial* likelihood that an expert's testimony would have created a different result.

## OBJECTION 3C

Hentzen's third objection asserts that the Report did not address his posited alternative prejudice theory.

### a. BACKGROUND

When the Sixth Circuit decided against reversing the original judgment of conviction in 2015, the Sixth Circuit discussed the grooming video and ultimately held that while admitting the video was error, the error was harmless "in light of the entire record" because the government had presented other convincing and overwhelming evidence:

> When the government presents other convincing or overwhelming evidence, we may deem the admission of 404(b) evidence mere harmless error." *United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999). . . . In light of the entire

record, the government sufficiently
established that the error was harmless. The
jury saw the animated video after seeing nine
properly admitted videos—videos that showed
actual children being abused by adult men in
horrifying ways—and a catalogue of child
pornography. The government reminded the jury
of the videos and catalogue in closing. The
government also relied on evidence that
Hentzen knew of the child pornography,
including the evidence from his browser
history and his search terms. As for the
animated video, it was never referenced after
its introduction into evidence nor was there
any further insinuation that Hentzen was
preparing or had the inclination to molest a
child. The limited use of the animated video
illustrates its lack of legitimate evidentiary
value, but it also weighs against any
conclusion that the jury would have decided
the case differently absent the introduction
of the animated video. We ultimately conclude
that the erroneous admission of the video did
not materially affect the jury's verdict.

*Hentzen v. United States* ("*Hentzen* 2014"), No. 14-6153, DE 26-1

(August 17, 2015).

   Hentzen now argues that if trial counsel had obtained and

prepared qualified expert testimony to expose and contest

inaccuracies in the government's digital-computer-forensic

testimony that the admittance of the grooming video would no longer

have been harmless because the "other" evidence would not have

been so "overwhelming." If the grooming video admittance was not

a harmless error, it *may* have warranted the Sixth Circuit reversing

the original judgment – which would meet the prejudice *Strickland*

prong because "but for" counsel's error a different result would

have occurred.

**b. ANALYSIS**

Addressing the alternative theory, this Court finds that the *Strickland* prejudice prong still cannot be met. The Sixth Circuit's opinion does not specify that *the* "overwhelming" evidence that made the error harmless was only the government's uncontested digital-computer-forensic evidence. Instead, the opinion declares that "in light of the entire record" the evidence presented was so "convincing" that even an error in admittance was harmless. The Sixth Circuit mentions multiple factors that influenced its decision including the government's "limited use" of the animated video, the jury viewing nine properly admitted videos depicting child abuse, and the government presenting knowledge-related evidence like Hentzen's browser history and search terms. Thus, the digital-computer-forensic evidence was only a minor factor in the Sixth Circuit's holding that the error was harmless. The appellate court came to this conclusion after considering "the entire record." It is not reasonably probable that the appellate court would have decided differently had the defense provided an expert to contest the government's digital-computer-evidence.

**OBJECTION 3D**

Hentzen next objects to the Report's multiple findings that Pence's performance was not deficient. Hentzen groups this objection into three categories: (a) ineffectiveness for failing to employ an expert like Cobb to rebut the government's digital-

21

computer-forensics evidence, (b) ineffectiveness for not contesting the government's inaccurate statements about "batch downloading," and (c) ineffectiveness for not introducing evidence to reveal that the government was wrong about the number of Hentzen's computers that had eMule installed. Hentzen's objections differ based upon the subsection at issue.

**a. OBJECTION 3D(a)**

Objection No.3D(a) deals with four criticisms found in Cobb's testimony: breach of universally accepted evidence-collection protocols, thumbnail files, .lnk files, and browser-activity. Hentzen asserts that the Report's analysis of these issues only focuses on the evidence being weak, conflating the two *Strickland* prongs and failing to contain a separate prejudice analysis. Hentzen's objections do not argue that the Report erred in holding that the evidence carried "little weight" and had "limited value." The Report's logic is sound because if evidence is weak then it is more difficult to prove that counsel was ineffective for not putting it forward.

Even if the Report did not contain a separate performance analysis for these issues, such an absence would not be detrimental. This Court reminds Hentzen that both prongs of *Strickland* must be met. A court is not required to engage in analysis about the performance prong if the Court has already shown that no prejudice exists.

> The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the deficient performance and prejudice inquiry if the defendant makes an insufficient showing on one." *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (internal quotation marks omitted). The Court may address the prongs in either order. *Strickland*, 466 U.S. at 697.

*United States v. Bellamy*, No. 2:17-cr-001-DLB-MAS-2, 2021 U.S. Dist. LEXIS 64825, at *11 (E.D. Ky. Jan. 8, 2021). A court is not required to analyze counsel's competence if the claim can be disposed of easier by addressing the lack of prejudice. *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004)(citing *Strickland*, 466 U.S. at 697)("We do not need to address the question of competence, however: 'if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"). As described in the Report and next section, Hentzen has not shown a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different," therefore, the Court is not required to detail how Hentzen's performance also was not deficient. *Strickland*, 466 U.S. at 694-95.

### b. OBJECTION 3D(b)

Objection No.3D(b) finds issue with the batch-downloading segment of the Report. At trial, Hentzen testified that he downloaded massive quantities of files at a time, meaning that he was unaware of everything he was downloading. In rebuttal, Examiner

Baker testified that log files on Hentzen's computer showed timestamps inconsistent with batch downloading. At the hearing Cobb testified that after viewing the evidence, he considers Hentzen's description to be correct.

Hentzen now asserts that Judge Ingram "essentially gives Mr. Hentzen's trial counsel a pass for not anticipating it." [DE 149 at 10-11]. In his supplemental brief in support of his § 2255 motion, Hentzen cites several cases and ABA standards that require an attorney to conduct a reasonable investigation before the attorney is to be given the presumption of performing adequately based on employing trial strategy. [DE 145 at 17].

A reviewing court must be "highly deferential" of trial counsel's performance, and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In turn, the movant defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. The defendant must show that the alleged deficient performance was an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Defendants alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'" *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006)(citing *Whiting v Burt*, 395 F.3d 602, 617 (6th Cir. 2005)). Reviewing courts must

overcome the tendency to fall prey to hindsight bias. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. "A perfect performance is not required." *Peters v. Chandler*, No. 3:03CV-P138-S, 2006 U.S. Dist. LEXIS 114918, at *53 (W.D. Ky. Apr. 13, 2006).

In *Resnick v. United States*, the defendant contended that his counsel was ineffective for failing "to counter the Government's computer forensics expert with a rebuttal expert." *Resnick v. United States*, 7 F.4th 611, 621 (7th Cir. 2021). Defense counsel missed the deadline to notice witnesses, and the court denied his late request to add a computer defense expert. The court found that defendant did not prove there was deficient performance because the defendant had not identified a capable expert and counsel's cross-examination of the government's computer forensic expert "was strong and highlighted the points [the defendant] now argues the expert could have made." *Id*. at *622. The court also emphasized that "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington v. Richter*, 562 U.S. 86, 111 L.Ed.2d 624 (2011).

The lack of expert testimony to combat opposing testimony does not automatically mean that Hentzen's trial counsel performed deficiently. This is especially true when the attorney is able to

utilize other strategies to argue the same points. Similar to the counsel in *Resnick,* Pence was able to contest the government's witnesses in other ways. Counsel had Hentzen testify that he regularly engaged in the process of downloading mass quantities of files at the same time and not checking the names of individual files. [DE 51 at 28, 33-34]. Counsel also had Hentzen's friend testify that Hentzen was a serial downloader [DE 51 at 113-114], suggesting that he likely unknowingly downloaded the contraband while using technology that allowed him to bulk-download files. While a defense expert contradicting the government's expert may have been helpful, the lack of an expert does not equate to deficient performance as *Strickland* warns courts to not fall trap to hindsight bias, noting that performance does not have to be perfect. Pence attempted to show through Hentzen's testimony as well as Hentzen's peer that he often batch downloaded material. More, as described by Judge Ingram, the government's expert rebuttal "evidence was only produced at the last minute, in the heat of trial," and "defense lawyers cannot be expected to anticipate or catch every inaccuracy, particularly in expert testimony."

In *U.S. v. Bird*, the defendant argued "that counsel should have called a computer forensics expert." No. 04-10184-JTM, 2006 WL 1675708, at *3 (D. Kan. June 13, 2006). The court found that the counsel was not constitutionally deficient because counsel

26

employed alternative strategy which included "permitting defendant to testify and attempting to distinguish defendant's style of writing e-mail messages." Plus, counsel had a computer forensics expert attend a meeting, but decided against using the expert "because he believed such experts were 'hedgy.'" *Id.* at *6. The Court found that this meeting suggested "that counsel conducted some level of investigation into employing an expert" but ultimately made the "objectively reasonable" decision to instead have "defendant explain these issues at trial." *Id.* at *3.

Similar to U.S. v. *Bird*, trial counsel here searched for, retained, and met with a computer expert. Ultimately, however, counsel made the informed decision to not utilize the expert at trial and instead to have Hentzen explain his computer set up and have a peer corroborate Hentzen's mass-downloading tendencies. This is exactly the kind of informed decision that requires great deference.

**c. OBJECTION 3D(c)**

Lastly, Objection No. 3D(c) asserts that the Report was clearly erroneous for holding that Hentzen's trial counsel was not ineffective for failing to introduce evidence contradicting the government's representations that eMule was only installed on the Sony VAIO laptop. Hentzen points to Cobb's finding that "even a lay person should have caught" this "objectively false" assertion. [DE 149 at 11]. Hentzen further argues that trial counsel did not

27

even need an expert to rebut this assertion but could have been put on notice by reading the government's Final Forensics Report and asked about the contradiction on cross-examination. [*Id*.]. In essence, Hentzen asserts that the Report's characterization of counsel's performance as "not deficient" ignores the bar attorneys are required to meet and improperly lowers the performance standards in order to hold that counsel was not deficient.

First, Judge Ingram's analysis of *Strickland*'s performance prong adequately states the law, which requires reviewing courts to be appropriately deferential to counsel's performance, not relying on hindsight. The Report emphasizes that attorneys are not required to anticipate everything or hire a perfect expert. [DE 148 at 55-56]. Judge Ingram also correctly defines the importance of the evidence. Hentzen does not dispute that the Sony VAIO laptop had eMule installed, so whether two additional computers had eMule installed "is not terribly relevant to the questions of whether Hentzen had ever knowingly received or possessed child pornography." [DE 148 at 55]. When the discrepancy that counsel failed to dispute is not "terribly relevant" to the main question in the case, it weighs against finding that counsel's performance was deficient.

While the Court agrees with Judge Ingram's conclusions, the Court also acknowledges the difficulty in showing how an attorney's actions were not deficient when the attorney is unable to explain

why he chose to engage in a certain trial strategy. Recognizing that Hentzen's trial was more than five years ago, Pence testified that he is unable to recall many details about the events leading up to trial. [DE 148 at 30]. Nonetheless, defendants have a heavy burden to overcome the "strong presumption" that their attorney's performance was reasonable. Pence attempted to secure an expert, spoke with an expert about preparing a report verifying or contradicting the government's forensic findings, and allowed Hentzen to testify on the matters. Even so, whether Hentzen has met this high burden is nonessential as the Court reminds Hentzen that the prejudice prong must also be met, and the Court finds that no prejudice occurred as outlined below.

## OBJECTION 3E

Hentzen's final objection asserts that the Report was clearly erroneous in finding that Hentzen was not prejudiced by trial counsel's performance. Hentzen similarly breaks this objection into three categories like Objection 3D.

### a. OBJECTION 3E(a)

First, Hentzen focuses on Cobb's evidence-collection criticisms, which assert that the government breached universally accepted computer forensic collection protocols, which is evidenced by thousands of files having timestamps after the computers were taken into custody. Hentzen argues that the Report contains several inaccurate statements about the condition of the

29

Sony VAIO laptop at the time investigators located the computer that resulted in an erroneous finding that the prejudice *Strickland* prong had not been met. The Report says that Hentzen's Sony VAIO laptop was found "running with the screen active and evidence of currently [sic] downloads appearing the screen" and, again, that "the VAIO was found running with potential criminal evidence on the screen." [DE 148 at 44-45]. Hentzen now argues that evidence, including photographs, indicate that the investigators "could not possibly have seen" potential criminal evidence on the screen at the time of the apartment search and could not have seen anything "running on the screen" until after Hentzen provided the password. [DE 149 at 14].

According to Hentzen's logic, if the screen did not have visible criminal evidence, then the government did not act appropriately by employing a program called "OS Triage" at the time of the apartment search instead of turning the computer off. The Report emphasizes that due to the state of the computer at the time of the search, OS Triage was justified and not a breach of universally accepted procedures of digital forensic data collection. Hentzen argues that if the Sony VAIO laptop did not actually have evidence of downloads on the screen visible to investigators at the time they entered the apartment, then Cobb's testimony would not be as significantly deflated as the Report declares. This in turn means that a defense expert, like Cobb, attacking the government's

forensic-data-collection methods at trial may have impacted the outcome of the jury. [DE 149 at 13-14].

Hentzen does not dispute that the Sony VAIO laptop was found on and operating at the time of the search. Thomas Ford Bell's testimony at trial indicates that the laptop was found on the keyboard tray that "was pushed up underneath the desk," and the lid was down. [DE 50 at 90]. However, when investigators "opened the computer and got into it, [they] found that eMule client was running on that Sony VAIO," and that it was "actively downloading files." [*Id.*]

Law enforcement tools utilized during the investigation also indicate that the computer was actively downloading at the time of the apartment search. Investigators were able to locate the Sony VAIO laptop because of the "shadow," a tracking device, and the "gatekeeper," a monitoring device. [DE 50 at 73]. Investigators use the device to monitor traffic related to the wireless access point and obtain notifications any time a keyword travels through it. Investigators knew the sought-after device was active at the time of the search warrant because they were "still receiving alerts that gatekeeper was detecting packet traffic with keywords actively going back and forth across the wireless network." [DE 50 at 89]. The signal brought investigators to the bedroom, "the signal got the strongest as [the investigator] got down by this keyboard tray," investigators located the Sony VAIO laptop, and

after laying the device against the computer confirmed that this was the sought-after computer. [*Id.* at 90].

Even if it was not true that investigators found Hentzen's VAIO "with the screen active and evidence of currently [sic] downloads appearing on the screen," as indicated by the Report, Defendant has not shown that the prejudice prong has been met. Investigators knew that the laptop was powered on and actively downloading contraband items without having to see the unlocked screen due to the utilization of the shadow and gatekeeper devices. Detective Mike Littrell, a forensic examiner that the government called at the evidentiary hearing, never said that OS Triage is only appropriate when the computer is found on with contraband evidence on display. Instead, Littrell emphasized that it is proper to use OS Triage in executing search warrants for pornography on computers. At the hearing, Cobb acknowledged that there are exceptions when triage is appropriate but was unable to clarify whether a computer "actively downloading" material met the exception. [DE 139 at 64-66].

If an expert like Cobb had testified at trial, the government could have deflated the impact of his testimony by having an expert like Littrell testify about the importance of running triage on computers suspected to have contraband and that changed time-stamps are expected with the triage approach. The government also could have cross-examined the defense expert as they did Cobb at

32

the evidentiary hearing. Cobb acknowledged that the timestamps could have been caused by the triage. The government's reasoning for utilizing OS Triage does have merit and, therefore, is not the "grand slam" evidence Hentzen posits it to be.

Second, Hentzen argues that Cobb's testimony about the thumbnail, .lnk, and browser-access evidence, "although admittedly less game-changing evidence," would nonetheless impact the government's credibility, especially when combined with expert testimony contradicting the government's other "digital-forensic-falsehoods," statements on batch downloading, and inaccuracies about the number of computers with eMule installations. First, this Court agrees with the Report's sound reasoning that expert testimony about the thumbnail, .lnk, and browser-access evidence would not have resulted in a different outcome for Hentzen. Second, this court has already discounted the prejudicial effects that Hentzen asserts occurred due to the confusion over whether the Sony VAIO laptop was found with an active screen at the time of the search. Third, this Court also discounts any prejudicial effect from the government's testimony about the number of eMule installations on Hentzen's computers, as later explained. Because the Court has not found that Hentzen has put forward any evidence that would result in a different outcome, it is logical that that the combination of this evidence would also not serve as the basis for finding prejudice.

Third, Hentzen finds fault with the Report's prejudicial prong conclusions related to how many of Hentzen's computers had eMule installed. At trial, Hentzen claimed that eMule was installed on multiple computers. Examiner Baker testified that the Sony VAIO laptop "was the only computer that had an eMule installation" [DE 50 at 252] and the government's opening and closing arguments also emphasized that the Sony VAIO laptop was the only of Hentzen's computers that had eMule installed. [DE 145 at 5]. Hentzen points to the government's forensic report, which indicates that eMule *was* installed on other computers in the apartment. Hentzen argues that his credibility at trial was diminished by the lack of expert testimony to affirm his declarations about eMule and that an expert's testimony exposing the government's untruth would have hurt the government's credibility and prevented Hentzen's credibility diminishment.

The Report found that the absence of expert testimony did not equate to IAC because the fact that two other computers had eMule installed "is not terribly relevant to the question of whether Hentzen had ever knowingly received or possessed child pornography" and because it is a "minor issue" the "conflict in testimony is not likely to have weighed heavily with the jury." [DE 148 at 55]. Hentzen counters that the number of eMule installation was not a minor issue "because the Government chose

to make it a big deal" by emphasizing it "five different times."
[DE 159 at 16].

While a defense expert would have been able to refute the
government's inaccurate declarations, the defense expert would not
have been able to contest the fact that the Sony VAIO laptop, which
was the computer that contained the contraband child pornography
for which Hentzen was convicted, did have eMule installed. Whether
or not two other computers that did not contain child pornography
had eMule installed does not change the fact the Sony VAIO laptop
did have eMule installed and also contained child pornography, an
issue not contested by Defendant. Therefore, that the results of
the proceeding would have been different had the jury been given
information that two irrelevant computers also had eMule installed
is not reasonably probable.

Even if Hentzen's credibility would have been bolstered by an
expert agreeing that eMule was on other computers, it is not
reasonably probable that an expert's corroborating testimony on
this issue would have completely strengthened Hentzen's
credibility so that the results of the proceeding would have been
different. The jury was able to listen to Hentzen's testimony as
well as the government's witnesses and come to a supportable
conclusion. This Court finds that there is sufficient evidence in
the record to support Hentzen's conviction, meaning any harms
caused by Pence's failure to call an expert witness to corroborate

35

Hentzen's testimony that he had multiple computers with eMule installations would not have changed the outcome of the trial.

### CERTIFICATE OF APPEALABILITY

The Report recommends issuing a COA for Ground One because, as it is very fact-intensive, "a reasonable jurist could conceivably find that Hentzen was prejudiced by failure to introduce the evidence described by Dr. Cobb." [DE 148 at 70]. Hentzen does not object to the issuance, and this Court finds the Report's reasoning to be sound.

### CONCLUSION

Accordingly, for the reasons stated herein and the Court being sufficiently advised, **IT IS ORDERED:**

(1) Magistrate Judge's Report and Recommendation [DE 148] is **ACCEPTED AND ADOPTED**; and

(2) Erik A. Hentzen's objections [DE 149] to Magistrate Judge Ingram's Report and Recommendation are **OVERRULED**;

(3) Erik A. Hentzen's § 2255 motion [DE 68] is **DENIED.**

(4) A Certificate of Appealability shall issue with respect to Ground One.

This the 21st day of June, 2022.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge